CASTILLO ET AL. *v.* UNITED STATES

No. 99–658.   Argued April 24, 2000—Decided June 5, 2000

BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, SOUTER, THOMAS, and GINSBURG, JJ., joined, and in which SCALIA, J., joined except as to point Fourth of Part II.

*Stephen P. Halbrook* argued the cause for petitioners. With him on the briefs were *John F. Carroll, Richard G. Ferguson, Stanley Rentz,* and *Steven R. Rosen.*

*Assistant Attorney General Robinson* argued the cause for the United States. With him on the brief were *Solicitor General Waxman, Deputy Solicitor General Dreeben, Edward C. DuMont,* and *Joseph C. Wyderko.**

JUSTICE BREYER delivered the opinion of the Court.†

In this case we once again decide whether words in a federal criminal statute create offense elements (determined by a jury) or sentencing factors (determined by a judge). See *Jones* v. *United States,* 526 U. S. 227 (1999); *Almendarez-Torres* v. *United States,* 523 U. S. 224 (1998). The statute in question, 18 U. S. C. § 924(c) (1988 ed., Supp. V), prohibits the use or carrying of a "firearm" in relation to a crime of violence, and increases the penalty dramatically when the weapon used or carried is, for example, a "machinegun." We conclude that the statute uses the word "machinegun" (and similar words) to state an element of a separate offense.

---

*Briefs of *amici curiae* urging reversal were filed for Law Enforcement Alliance of America, Inc., by *Richard E. Gardiner;* and for the National Association of Criminal Defense Lawyers et al. by *Ann C. McClintock, Kyle O'Dowd,* and *Barbara Bergman.*

†JUSTICE SCALIA joins this opinion except as to point Fourth of Part II.

I

Petitioners are members of the Branch-Davidian religious sect and are among those who were involved in a violent confrontation with federal agents from the Bureau of Alcohol, Tobacco, and Firearms near Waco, Texas, in 1993. The case before us arises out of an indictment alleging that, among other things, petitioners conspired to murder federal officers. At the time of petitioners' trial, the criminal statute at issue (reprinted in its entirety in the Appendix, *infra*) read in relevant part:

> "(c)(1) Whoever, during and in relation to any crime of violence . . . , uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . , be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle [or a] short-barreled shotgun to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years." 18 U. S. C. § 924(c)(1) (1988 ed., Supp. V).

A jury determined that petitioners had violated this section by, in the words of the trial judge's instruction, "knowingly us[ing] or carr[ying] a firearm during and in relation to" the commission of a crime of violence. App. 29. At sentencing, the judge found that the "firearms" at issue included certain machineguns (many equipped with silencers) and handgrenades that the defendants actually or constructively had possessed. *United States* v. *Branch,* Crim. No. W–93–CR–046 (WD Tex., June 21, 1994), reprinted in App. to Pet. for Cert. 119a, 124a–125a. The judge then imposed the statute's mandatory 30-year prison sentence. *Id.,* at 134a.

Petitioners appealed. Meanwhile, this Court decided that the word "use" in § 924(c)(1) requires evidence of more than "mere possession." *Bailey* v. *United States,* 516 U. S. 137, 143 (1995). The Court of Appeals subsequently held that

our decision in *Bailey* necessitated a remand of the case to determine whether, in *Bailey*'s stronger sense of "use," petitioners had used "machineguns and other enhancing weapons." *United States* v. *Branch*, 91 F. 3d 699, 740–741 (CA5 1996). The court also concluded that statutory words such as "machinegun" create sentencing factors, *i. e.*, factors that enhance a sentence, not elements of a separate crime. *Id.*, at 738–740. Hence, it specified that the jury "was not required" to determine whether petitioners used or carried "machineguns" or other enhanced weapons. *Id.*, at 740. Rather, it wrote that "[s]hould *the district court* find on remand that members of the conspiracy actively employed machineguns, it is free to reimpose the 30-year sentence." *Id.*, at 740–741 (emphasis added). On remand, the District Court resentenced petitioners to 30-year terms of imprisonment based on its weapons-related findings. See App. to Pet. for Cert. 119a. The Court of Appeals affirmed. 179 F. 3d 321 (CA5 1999).

The Federal Courts of Appeals have different views as to whether the statutory word "machinegun" (and similar words appearing in the version of 18 U. S. C. § 924(c)(1) here at issue) refers to a sentencing factor to be assessed by the trial court or creates a new substantive crime to be determined by the jury. Compare, *e. g.*, *United States* v. *Alborola-Rodriguez*, 153 F. 3d 1269, 1272 (CA11 1998) (sentencing factor), with *United States* v. *Alerta*, 96 F. 3d 1230, 1235 (CA9 1996) (element). We granted certiorari to resolve the conflict.

## II

The question before us is whether Congress intended the statutory references to particular firearm types in § 924(c)(1) to define a separate crime or simply to authorize an enhanced penalty. If the former, the indictment must identify the firearm type and a jury must find that element proved beyond a reasonable doubt. If the latter, the matter need not be tried before a jury but may be left for the sentencing

judge to decide. As petitioners note, our decision in *Jones* concluded, in a similar situation, that treating facts that lead to an increase in the maximum sentence as a sentencing factor would give rise to significant constitutional questions. See 526 U. S., at 239–252. Here, even apart from the doctrine of constitutional doubt, our consideration of § 924(c)(1)'s language, structure, context, history, and such other factors as typically help courts determine a statute's objectives, leads us to conclude that the relevant words create a separate substantive crime.

First, while the statute's literal language, taken alone, appears neutral, its overall structure strongly favors the "new crime" interpretation. The relevant statutory sentence says: "Whoever, during and in relation to any crime of violence . . . , uses or carries a firearm, shall . . . be sentenced to imprisonment for five years, and if the firearm is a . . . machinegun, . . . to imprisonment for thirty years." § 924(c)(1). On the one hand, one could read the words "during and in relation to a crime of violence" and "uses or carries a firearm" as setting forth two basic elements of the offense, and the subsequent "machinegun" phrase as merely increasing a defendant's sentence in relevant cases. But, with equal ease, by emphasizing the phrase "if *the* firearm is a . . . ," one can read the language as simply substituting the word "machinegun" for the initial word "firearm"; thereby both incorporating by reference the initial phrases that relate the basic elements of the crime and creating a different crime containing one new element, *i. e.,* the use or carrying of a "machinegun" during and in relation to a crime of violence.

The statute's structure clarifies any ambiguity inherent in its literal language. The first part of the opening sentence clearly and indisputably establishes the elements of the basic federal offense of using or carrying a gun during and in relation to a crime of violence. See *United States* v. *Rodriguez-Moreno,* 526 U. S. 275, 280 (1999). Congress

placed the element "uses or carries a firearm" and the word "machinegun" in a single sentence, not broken up with dashes or separated into subsections. Cf. *Jones, supra*, at 232–233 (noting that the structure of the carjacking statute—a "principal paragraph" followed by "numbered subsections"—makes it "look" as though the statute sets forth sentencing factors). The next three sentences of § 924(c)(1) (which appear *after* the sentence quoted above (see Appendix, *infra*)) refer directly to sentencing: the first to recidivism, the second to concurrent sentences, the third to parole. These structural features strongly suggest that the basic job of the entire first sentence is the definition of crimes and the role of the remaining three is the description of factors (such as recidivism) that ordinarily pertain only to sentencing.

We concede that there are two other structural circumstances that suggest a contrary interpretation. The title of the entirety of § 924 is "Penalties"; and in 1998 Congress reenacted § 924(c)(1), separating different parts of the first sentence (and others) into different subsections, see Pub. L. 105–386, § 1(a)(1), 112 Stat. 3469. In this case, however, the section's title cannot help, for Congress already has determined that at least some portion of § 924, including § 924(c) itself, creates, not penalty enhancements, but entirely new crimes. See S. Rep. No. 98–225, pp. 312–314 (1984) ("Section 924(c) sets out an offense distinct from the underlying felony and is not simply a penalty provision"); see also *Busic* v. *United States*, 446 U. S. 398, 404 (1980); *Simpson* v. *United States*, 435 U. S. 6, 10 (1978). The title alone does not tell us which are which. Nor can a new postenactment statutory restructuring help us here to determine what Congress intended at the time it enacted the earlier statutory provision that governs this case. See *Almendarez-Torres*, 523 U. S., at 237 (amendments that, among other things, neither "declare the meaning of earlier law" nor "seek to clarify an earlier enacted general term" fail to provide interpretive guidance).

Second, we cannot say that courts have typically or traditionally used firearm types (such as "shotgun" or "machinegun") as sentencing factors, at least not in respect to an underlying "use or carry" crime. See *Jones, supra,* at 234 ("[S]tatutory drafting occurs against a backdrop . . . of traditional treatment of certain categories of important facts"); see also *Almendarez-Torres, supra,* at 230 (recidivism "is as typical a sentencing factor as one might imagine"). Traditional sentencing factors often involve either characteristics of the offender, such as recidivism, or special features of the manner in which a basic crime was carried out (*e. g.,* that the defendant abused a position of trust or brandished a gun). See 18 U. S. C. § 3553(a)(1) (providing that a sentencing court "shall" consider "the history and characteristics of the defendant" and "the nature and circumstances of the offense"); see also, *e. g.,* United States Sentencing Commission, Guidelines Manual § 4A1.1 (Nov. 1998) (sentence based in part on defendant's criminal history); § 3B1.3 (upward adjustment for abuse of position of trust); § 5K2.6 (same for use of a dangerous instrumentality). Offender characteristics are not here at issue. And, although one might consider the use of a machinegun, or for that matter a firearm, as a means (or a *manner*) in which the offender carried out the more basic underlying crime of violence, the underlying crime of violence is *not* the basic crime here at issue. Rather, as we have already mentioned, the use or carrying of a firearm is itself a separate substantive crime. See *Busic, supra,* at 404; *Simpson, supra,* at 10.

The Government argues that, conceptually speaking, one can refer to the use of a machinegun as simply a "metho[d]" of committing the underlying "firearms offense." Brief for United States 23. But the difference between carrying, say, a pistol and carrying a machinegun (or, to mention another factor in the same statutory sentence, a "destructive device," *i. e.,* a bomb) is great, both in degree and kind. And, more importantly, that difference concerns the nature of the ele-

ment lying closest to the heart of the crime at issue. It is not surprising that numerous gun crimes make substantive distinctions between weapons such as pistols and machineguns. See, *e. g.*, 18 U. S. C. § 922(a)(4) (making it unlawful to "transport in interstate or foreign commerce" any "destructive device," "machine gun," or similar type of weapon unless carrier is licensed or authorized, but making no such prohibition for pistols); § 922(b)(4) (prohibiting the unauthorized sale or delivery of "machine gun[s]" and similar weapons); § 922(*o*)(1) (making it "unlawful for any person to transfer or possess a machine gun"); § 922(v)(1) (making it illegal "to manufacture, transfer, or possess a semiautomatic assault weapon"). And we do not have any indication that legislatures or judges typically have viewed the difference between using a pistol and using a machinegun as insubstantial. Indeed, the fact that (a) the statute at issue prescribes a mandatory penalty for using or carrying a machinegun that is six times more severe than the punishment for using or carrying a mere "firearm," and (b) at least two Courts of Appeals have interpreted § 924(c)(1) as setting forth a separate "machinegun" element in relevant cases, see *Alerta*, 96 F. 3d, at 1235; Judicial Committee on Model Jury Instructions for the Eighth Circuit, Manual of Model Criminal Jury Instructions ¶ 6.18.924C (1997 ed.), in L. Sand, J. Siffert, W. Loughlin, & S. Reiss, Modern Federal Jury Instructions: Criminal Pattern Instructions, p. 8–153 (1999), points to the conclusion that the difference between the act of using or carrying a "firearm" and the act of using or carrying a "machinegun" is both substantive and substantial—a conclusion that supports a "separate crime" interpretation.

Third, to ask a jury, rather than a judge, to decide whether a defendant used or carried a machinegun would rarely complicate a trial or risk unfairness. Cf. *Almendarez-Torres, supra*, at 234–235 (pointing to potential unfairness of placing fact of recidivism before jury). As a practical matter, in determining whether a defendant used or carried a "firearm,"

the jury ordinarily will be asked to assess the particular weapon at issue as well as the circumstances under which it was allegedly used. Furthermore, inasmuch as the prosecution's case under § 924(c) usually will involve presenting a certain weapon (or weapons) to the jury and arguing that the defendant used or carried that weapon during a crime of violence within the meaning of the statute, the evidence is unlikely to enable a defendant to respond *both* (1) "I did not use or carry *any* firearm," and (2) "even if I did, it was a pistol, not a machinegun." Hence, a rule of law that makes it difficult to make both claims at the same time to the same decisionmaker (the jury) will not often prejudice a defendant's case.

At the same time, a contrary rule—one that leaves the machinegun matter to the sentencing judge—might unnecessarily produce a conflict between the judge and the jury. That is because, under our case law interpreting the statute here at issue, a jury may well have to decide which of several weapons the defendant actively used, rather than passively possessed. See *Bailey*, 516 U. S., at 143. And, in such a case, the sentencing judge will not necessarily know which "firearm" supports the jury's determination. Under these circumstances, a judge's later, sentencing-related decision that the defendant used the machinegun, rather than, say, the pistol, might conflict with the jury's belief that he actively used the pistol, which factual belief underlay its firearm "use" conviction. Cf. *Alerta, supra,* at 1234–1235 (in the absence of a specific jury finding regarding the type of weapon that defendant used, it was possible that the jury did not find "use" of a machinegun even though the judge imposed the 30-year mandatory statutory sentence). There is no reason to think that Congress would have wanted a judge's views to prevail in a case of so direct a factual conflict, particularly when the sentencing judge applies a lower standard of proof and when 25 additional years in prison are at stake.

Fourth, the Government argues that the legislative history of the statute favors interpreting §924(c) as setting forth sentencing factors, not elements. It points out that §924(c), as originally enacted, provided a mandatory minimum prison term of at least one year (up to a maximum of 10 years) where a person (1) "use[d] a firearm to commit any felony," or (2) "carr[ied] a firearm unlawfully during the commission of any felony." Gun Control Act of 1968, §102, 82 Stat. 1223; see also Omnibus Crime Control Act of 1970, §13, 84 Stat. 1889. In 1984, Congress amended the law, eliminating the range of permissible penalties, setting a mandatory prison term of five years, and specifying that that term was to be added on top of the prison term related to the underlying "crime of violence," including statutory sentences that imposed certain other weapons-related enhancements. See Comprehensive Crime Control Act of 1984, §1005(a), 98 Stat. 2138. In 1986, Congress again amended the law by providing for a 10-year mandatory prison term (20 years for subsequent offenses) "if the firearm is a machinegun, or is equipped with a firearm silencer or firearm muffler." Firearms Owners' Protection Act, §104(a)(2), 100 Stat. 456. .In 1988, Congress changed the provision to its here-relevant form. Anti-Drug Abuse Act of 1988, §6460, 102 Stat. 4373.

The Government finds three features of the history surrounding the enactment of the key 1986 version of the statute significant. First, the House Report spoke in terms of a sentence, not an offense. The Report stated, for example, that the relevant bill would create "a new mandatory prison term of ten years for using or carrying a machine gun during and in relation to a crime of violence or a drug trafficking offense for a first offense, and twenty years for a subsequent offense." H. R. Rep. No. 99–495, p. 28 (1986); see also id., at 2 (bill "[p]rovides a mandatory prison term of ten years for using or carrying a machine gun during and in relation to a crime of violence or a drug trafficking offense, and a

mandatory twenty years for any subsequent offense"). Second, statements of the bill's sponsors and supporters on the floor of the House also spoke in terms of sentencing, noting, for example, that the proposed law "imposes mandatory prison terms on those [who] would use a machinegun in the commission of a violent offense." 132 Cong. Rec. 3809 (1986) (statement of Rep. Hughes); see also, e. g., id., at 6843 (statement of Rep. Volkmer) (bill "includes stiff mandatory sentences for the use of firearms, including machineguns and silencers, in relation to violent or drug trafficking crimes"); id., at 6850 (statement of Rep. Moore) (machinegun clause "strengthen[s] criminal penalties"); id., at 6856 (statement of Rep. Wirth) (proposed law "would have many benefits, including the expansion of mandatory sentencing to those persons who use a machinegun in the commission of a violent crime"). Third, and similarly, "any discussion suggesting the creation of a new offense" was "[n]oticeably absent" from the legislative record. 91 F. 3d, at 739; Brief for United States 36.

Insofar as this history may be relevant, however, it does not significantly help the Government. That is because the statute's basic "uses or carries a firearm" provision *also* dealt primarily with sentencing, its pre-eminent feature consisting of the creation of a new mandatory term of imprisonment additional to that for the underlying crime of violence. Cf. *Bailey, supra,* at 142 ("Section 924(c)(1) requires the imposition of specified penalties"); *Smith* v. *United States,* 508 U. S. 223, 227 (1993) (same). In this context, the absence of "separate offense" statements means little, and the "mandatory sentencing" statements to which the Government points show only that Congress believed that the "machinegun" and "firearm" provisions would work similarly. Indeed, the legislative statements that discuss a new prison term for the act of "us[ing] a machine gun," see, e. g., *supra* this page, seemingly describe offense conduct, and, thus, argue *against* (not *for*) the Government's position.

Fifth and finally, the length and severity of an added mandatory sentence that turns on the presence or absence of a "machinegun" (or any of the other listed firearm types) weighs in favor of treating such offense-related words as referring to an element. Thus, if after considering traditional interpretive factors, we were left genuinely uncertain as to Congress' intent in this regard, we would assume a preference for traditional jury determination of so important a factual matter. Cf. *Staples* v. *United States*, 511 U. S. 600, 619, n. 17 (1994) (rule of lenity requires that "ambiguous criminal statute[s] . . . be construed in favor of the accused"); *United States* v. *Granderson*, 511 U. S. 39, 54 (1994) (similar); *United States* v. *Bass*, 404 U. S. 336, 347 (1971) (same).

These considerations, in our view, make this a stronger "separate crime" case than either *Jones* or *Almendarez-Torres*—cases in which we were closely divided as to Congress' likely intent. For the reasons stated, we believe that Congress intended the firearm type-related words it used in § 924(c)(1) to refer to an element of a separate, aggravated crime. Accordingly, we reverse the contrary determination of the Court of Appeals and remand the case for proceedings consistent with this opinion.

*It is so ordered.*

## APPENDIX TO OPINION OF THE COURT

"§ 924. Penalties.

. . . . .

"(c)(1) Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for

five years, and if the firearm is a short-barreled rifle [or a] short-barreled shotgun to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to life imprisonment without release. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein." 18 U. S. C. § 924(c)(1) (1988 ed., Supp. V) (footnote omitted).