# United States Court of Appeals
## For the First Circuit

No. 01-1868

UNITED STATES OF AMERICA,

Appellee,

v.

STEVEN K. BROWN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Lynch, Circuit Judge.

James Patrick Bardsley, with whom Law Office of Bardsley & Gray, was on brief for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

July 16, 2002

**TORRUELLA**, **Circuit Judge**. Defendant-appellant Steven K. Brown pled guilty to nine offenses, including kidnapping in violation of 18 U.S.C. § 1201(a)(1). On appeal, Brown seeks to vacate his kidnapping conviction, arguing that the indictment failed to allege a necessary element of the kidnapping offense under which he was sentenced. Even assuming the indictment was wanting in some regard, Brown's appeal must fail because he cannot demonstrate that the indictment's error prejudiced him. We therefore affirm his conviction.

## FACTUAL BACKGROUND

Armed with knives, a shotgun, and an assault rifle, Steven Brown and Patricia Teeter drove from New York to Lebanon, Maine on March 28, 1999. After finding the home of the appellant's ex-wife, Deborah Brown, the travelers hatched a murderous plot. They planned to have Teeter lure the residents of Deborah Brown's home, one by one, to an abandoned car, where Steven Brown would be waiting to kill them.

Under the pretext of needing help with her car, Teeter persuaded Deborah Brown's brother, Donald Wood, to accompany her to the abandoned vehicle. As Wood unsuspectingly approached the car, the appellant emerged unnoticed from the bushes, hit Wood with a pipe, and fatally stabbed him.

Immediately following the killing, Brown instructed Teeter to replay the gruesome scene with a new victim. Teeter then returned to the house and lured Deborah Brown's boyfriend, Christopher Brouillard, to the abandoned car. Faithful to their

plan, Brown hit Brouillard over the head with a pipe, dragged his body into the nearby woods, and stabbed him to death.

Seeking yet another macabre encore, Teeter returned to the house and convinced Deborah Brown to follow her. Rather than walking to the designated location, however, Deborah Brown drove her car. As she was approaching the abandoned vehicle, Deborah Brown spotted the appellant hiding in the woods and fled back to her home. After a brief chase, Brown and Teeter caught the victim and forced her, at gunpoint, to get into a car with them. They drove Deborah Brown to a motel in New York, where the appellant sexually assaulted her repeatedly. Two days later, the New York police arrested Brown and Teeter.

On May 27, 1999, a federal grand jury returned a ten-count indictment against Brown. Count one alleged that he and Teeter conspired to kidnap Deborah Brown and to cross state lines with the intent to commit various crimes, in violation of 18 U.S.C. § 371. As part of this count, Brown was charged with the deaths of Donald Wood and Christopher Brouillard. Count two charged appellant with kidnapping Deborah Brown, in violation of 18 U.S.C. § 1201(a)(1); however, count two did not allege that the kidnapping resulted in the death of any person. In counts three and four, Brown was charged with carrying a shotgun and an assault rifle, respectively, during and in relation to the other crimes alleged in the indictment, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. Counts five and six alleged that Brown traveled across state lines -- and caused Deborah Brown to cross state lines -- with the

intent to harass his ex-spouse and committed a crime of violence against her, in violation of 18 U.S.C. §§ 2261(a)(1), (a)(2), (b)(1), (b)(3), (b)(4), and 18 U.S.C. § 2.  In count seven, Brown was charged with engaging in interstate travel with the intent to place Deborah Brown in reasonable fear of death or serious bodily injury, in violation of 18 U.S.C. §§ 2261A, 2261(b)(1), (b)(3), (b)(4), and 18 U.S.C. § 2.[1]  Count nine alleged that Brown crossed state lines with the intent to violate a protection order, in violation of 18 U.S.C. §§ 2262(a)(1), (b)(1), (b)(3), (b)(4), and 18 U.S.C. § 2.  Lastly, count ten charged Brown with transporting a shotgun in interstate commerce with the intent to commit the felonies described in counts one through nine of the indictment, in violation of 18 U.S.C. § 924(b) and 18 U.S.C. § 2.

On November 4, 1999, Brown pleaded guilty to counts one through seven, nine, and ten.  The district court sentenced him to life imprisonment on counts five, six, seven, and nine; to sixty months on count one; to one hundred and twenty months on count ten; to sixty months on count three; and to sixty months on count four. With respect to count two, the kidnapping charge, the court determined that since Wood and Brouillard were killed during the kidnapping, Brown would be sentenced to the mandatory term of life imprisonment.  Seeking to vacate only his kidnapping conviction, Brown filed the instant appeal.

---

[1]  Count eight, which charged Brown with crossing state lines with the intent to injure and harass Deborah Brown and place Donald Wood in reasonable fear of death and serious injury, was later dismissed on the government's motion.

## DISCUSSION

Under the Federal Rules of Criminal Procedure, an indictment must provide "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The indictment should be specific enough to notify the defendant of the nature of the accusation against him and to apprise the court of the facts alleged. See Russell v. United States, 369 U.S. 749, 766-68 (1962). Though there is no prescribed formula, "'[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself,' as long as those words set forth all the elements of the offense without any uncertainty or ambiguity." United States v. Serino, 835 F.2d 924, 929 (1st Cir. 1987) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).

Brown argues that his indictment was defective because it failed to allege one of the essential elements of the kidnapping crime under which he was sentenced -- namely, that the death of a person resulted.[2] Under the relevant portions of the federal kidnapping statute, any person who:

> unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

---

[2] Although Brown seeks to dismiss the indictment, we think the case is better characterized as an effort to vacate a plea.

-5-

18 U.S.C. § 1201(a). Brown interprets this statutory language to mean that the fact that a death results from the kidnapping is not a sentencing factor, but rather an element of the offense. Therefore, it must be included in the indictment in order to comport with the Constitution.[3] See generally Hamling, 418 U.S. at 117-18 (discussing the constitutional requirement that an indictment contain all the elements of the offense charged). Since his indictment only accused him of kidnapping, and did not specifically charge him with a kidnapping that resulted in a death, Brown concludes that he did not receive fair notice of the charges against him and seeks to be reindicted on the kidnapping charge.[4]

For the purposes of this appeal, we assume, without deciding, that the "death of any person" as a result of kidnapping is an element of the offense, thereby rendering Brown's indictment defective for failing to include it. The omission of an element of the offense from an indictment, however, is not automatic grounds for reversal. See United States v. Mojica-Báez, 229 F.3d 292, 310-12 (1st Cir. 2000). "We still must determine whether the defect in

---

[3] In support of his argument, Brown relies primarily on Castillo v. United States, 530 U.S. 120 (2000), in which the Supreme Court held that the statutory sentencing enhancement for using or possessing a "machinegun" under 18 U.S.C. § 942(c)(1) is an element of the offense, rather than a sentencing factor. Castillo, 530 U.S. at 123-25.

[4] The question of when a guilty plea suffices to waive a claim of defect in an indictment is a complex one, hinging on whether the claimed defect is jurisdictional or merely "factual and theoretical." Valencia v. United States, 923 F.2d 917, 920 (1st Cir. 1991). We need not address this issue; we assume, arguendo, that there is no waiver for purposes of this case. We, therefore, assess the merits of Brown's claim of defect.

-6-

the indictment prejudiced [appellant]." United States v. Yefsky, 994 F.2d 885, 894 (1st Cir. 1993) (citing United States v. Fusaro, 708 F.2d 17, 23 (1st Cir. 1983)).

Brown's claim that he was prejudiced by the lack of fair notice of the charges against him is "serious," Mojica-Báez, 229 F.3d at 310, and, if true, would "seriously affect[] the fairness, integrity, and public reputation of a judicial proceeding." United States v. Murphy, 762 F.2d 1151, 1155 (1st Cir. 1985) (ruling, without analysis, that an indictment's failure to apprise a defendant of the charges against him is reversible error, even when the issue is raised for the first time on appeal).[5]

Notwithstanding his protestations to the contrary, Brown's claim that he lacked fair notice of the charges against him cannot withstand even the mildest scrutiny.[6] First, though the kidnapping count did not allege that the kidnapping resulted in a

_____

[5]  Though we did not specifically characterize this error as a structural one in Murphy, the fact that we treated the error as per se prejudicial suggests that it may rise to the level of a structural error. See Mojica-Báez, 229 F.3d at 310 (implying that the lack of fair notice of the charges against a defendant is a structural error that cannot be analyzed under the harmless error analysis).

[6]  The question of which standard of review to apply to Brown's claim is a disputed issue. Our general rule is that if the issue of the alleged defect was not raised below, we review for plain error. See Mojica-Báez, 229 F.3d at 306. Brown states in his brief that because "[t]here was no objection to the indictment or facts asserted by the Government at the Rule 11 hearing [,] . . . the court should review this type of error for 'plain error.'" Surprisingly, the government argues in its brief that Brown raised the issue below and, as a result, should face a lower standard of review. Determining what standard of review should apply to this case is academic, as Brown's appeal fails under either the harmless error standard or plain error review.

death, the conspiracy count explicitly charged Brown with killing Wood and Brouillard. From the beginning, then, Brown was on notice that he was being charged with conduct that included the deaths of two people.

Second, Brown knew, before pleading guilty, that he faced the mandatory term of life in prison because two people died during the kidnapping. Before entertaining Brown's guilty plea, the district court instructed the parties to file briefs on the issue of whether the "death of any person" as a result of kidnapping is an element of the offense or a sentencing factor. The court ruled that the statutory provision at issue was a sentencing factor and informed Brown that if he pleaded guilty to the kidnapping charge, he would be sentenced to a mandatory term of life imprisonment that by statute applies "if the death of any person results." Thus, Brown was aware of the charges against him and of the corresponding penalties before entering his guilty plea.

Third, at the Rule 11 hearing, the district court unequivocally informed Brown that he was facing mandatory life imprisonment on the kidnapping count because of the deaths of Wood and Brouillard. The court asked appellant:

> Do you understand that if you are convicted of the offense charged in Count II, and if the government can carry its burden of proof to prove that a death resulted from the offense conduct that you will stand exposed to a mandatory minimum sentence of life imprisonment plus a fine of $250,000?

Brown answered this question in the affirmative, indicating his understanding of the charges against him.

-8-

Fourth, the prosecution introduced an exhibit at the Rule 11 hearing which described the events that transpired on the night of the kidnapping, including the gruesome murders of Wood and Brouillard. The defendant informed the court that he had discussed the prosecution's exhibit with his attorney, that he knew the government was capable of presenting evidence to prove its version of the events, and that he was aware that the prosecution's exhibit would form the basis for sentencing.

Thus, the multiple colloquies between the district court and the appellant reveal that Brown was completely aware of all of the charges against him and of the concomitant penalties. See Yefsky, 994 F.2d at 894 ("Although the indictment itself did not warn [appellant] of the nature of the [charge], he received ample notice before trial of the facts underlying it.").

In addition, the fact that Brown admitted to killing Wood and Brouillard substantially weakens any other claim of prejudice that he may have. In United States v. Corporan-Cuevas, 244 F.3d 199 (1st Cir. 2001), the defendant was charged under 18 U.S.C. § 1203, which, inter alia, criminalizes hostage takings by foreign nationals. See id. at 201. The defendant argued that the indictment was defective because it failed to include an element of the offense -- namely, that he was not a United States national (the "international component"). On appeal, we ruled that it was unnecessary to decide whether the international component was an element of the offense that must be included in the indictment because the defendant had already admitted to being a foreign

national.  In light of the defendant's admission, we could not find any evidence in the record to support his claim of prejudice.  <u>See</u> <u>id.</u> at 202.

Applying the <u>Corporan-Cuevas</u> analysis to the instant case yields the same result.  Several times in open court, the appellant admitted to kidnapping Deborah Brown and killing two people in the process.  In fact, Brown received an acceptance-of-responsibility credit under the Sentencing Guidelines for confessing to the killings.  Like the defendant in <u>Corporan-Cuevas</u>, Brown has confessed to the putative element of the offense that was omitted from the indictment.  Given Brown's admission, it is difficult to find sufficient prejudice to warrant reversal.

Finally, even if we were to vacate the appellant's conviction on the kidnapping charge, he would still be serving multiple life sentences for the other crimes to which he pled guilty.  This fate undeniably muffles Brown's cries of prejudice.  Furthermore, if the appellant were to be reindicted on the kidnapping count, the government would be authorized to seek the death penalty.  Given that he may face the death penalty if reindicted, Brown's claim that he was prejudiced by the current indictment is entirely without merit.

## <u>CONCLUSION</u>

For the foregoing reasons, we **<u>affirm</u>** Brown's conviction.