United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 4, 2003**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals

## for the Fifth Circuit

_____

m 01-21166

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ENRIQUE GONZALES, SR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
m H-95-299-02

_____

Before GARWOOD, SMITH, and BARKSDALE,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

At issue is whether *Castillo v. United States*, 530 U.S. 120 (2000), applies retroactively on collateral review. We conclude that *Castillo* announced a new procedural rule that is not retroactive under *Teague v. Lane*, 489 U.S. 288 (1989). We therefore affirm the denial of Enrique Gonzales's motion for relief from sentence under 28 U.S.C. § 2255.

I.

Gonzales was convicted of several drug trafficking and firearms charges, including one count of carrying a firearm in violation of 18 U.S.C. § 924(c)(1). For the § 924(c)(1) count, the indictment referred to a generic "firearm" but did not specify that Gonzales carried a machinegun. With jury instructions that mirrored the indictment, the jury convicted Gonzales of all counts.

The government then filed a motion seeking a thirty-year sentence on the § 924(c)(1) count. At the time, § 924(c)(1) imposed a five-year sentence for carrying an ordinary firearm, but a thirty-year sentence for carrying a machinegun.[1] The court granted the motion, finding that Gonzales had carried a machinegun, and sentenced him to thirty-years' imprisonment on the § 924(c)(1) count.[2] We affirmed. *United States v. Gonzales*, 121 F.3d 928 (5th Cir. 1997), *cert. denied*, 522 U.S. 1131 (1998).

Gonzales then filed a § 2255 motion to correct the sentence on the § 924(c)(1) count. Following *Castillo* and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), he argues that his sentence violates his Fifth and Sixth Amendment rights, because the indictment did not allege, and the jury did not find beyond a reasonable doubt, that the firearm was a machinegun. The district court denied the motion, holding that *Apprendi* and *Castillo* announce new procedural rules that are not retroactive under *Teague*. *See Gonzales v. United States*, 159 F. Supp. 2d 555 (S.D. Tex. 2001). Because of their importance, the court granted a certificate of appealability on both questions.

---

[1] "Whoever, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime, be sentenced to imprisonment for five years, . . . and if the firearm is a machinegun, . . . to imprisonment for thirty years." 18 U.S.C. § 924(c)(1) (1994). Congress since has amended § 924(c)(1).

[2] The jury also had found Gonzales guilty of possession of a machinegun in violation of 18 U.S.C. § 922(*o*)(1). The indictment and jury instructions for this count specified that Gonzales's firearm was a machinegun. There was no evidence of another firearm involved in Gonzales's crimes.

## II.

Gonzales seeks collateral relief from his sentence based on the rules of *Apprendi* and *Castillo*. Because there are no disputed facts, we review the denial of the § 2255 motion *de novo*. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

These rules are "new" as to Gonzales, because his conviction and sentence were final before the Supreme Court decided either *Apprendi* or *Castillo*. Some new rules apply retroactively on collateral review, others not. If a new rule is substantive, i.e., if it interprets the meaning of a criminal statute, it always applies retroactively. *Davis v. United States*, 417 U.S. 333 (1974). If it is procedural, however, it applies retroactively only if it fits one of the *Teague* exceptions: (1) "[I]t places certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe," or (2) "it requires the observance of those procedures that are implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 311 (quotation marks and alterations omitted).

Gonzales argues that *Apprendi* and *Castillo* announced substantive rules that necessarily apply retroactively. In the alternative, he contends that these rules fit the second *Teague* exception if they are procedural. After briefing was completed in this case, we held in *United States v. Brown*, 305 F.3d 304 (5th Cir. 2002), that *Apprendi* announced a non-retroactive procedural rule; we now conclude that *Castillo* did the same.

## A.

In *Castillo*, 530 U.S. at 131, the Court held that "Congress intended the firearm type-related words it used in § 924(c)(1) to refer to an element of a separate, aggravated crime."

Gonzales argues that this rule is substantive and therefore applies retroactively to his sentence.[3] To the contrary, the rule of *Castillo* is procedural, because its functional effect is to shift fact-finding responsibility from judge to jury, not to alter the meaning of the fact to be found.

The Supreme Court explained the "distinction between substance and procedure . . . in the habeas context" in *Bousley v. United States*, 523 U.S. 614, 620 (1998): "[O]ne of the 'principal functions of habeas corpus is to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted'" (quoting *Teague*, 489 U.S. at 312) (alteration omitted).

A procedural rule, in other words, ensures "an accurate conviction" of conduct that the law criminalizes. *Id.* (quoting *Teague*, 489 U.S. at 313). A substantive rule, on the other hand, involves a "decision[ ] of [a court] holding that a substantive federal criminal statute does not reach certain conduct." *Id.* That is, a substantive rule interprets a federal criminal statute to determine what conduct the law in fact criminalizes.

We recently applied this distinction in *Brown*. In *Apprendi*, 530 U.S. at 476, the Court held that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt" (quoting *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999)). We explained in *Brown*, 305 F.3d at 309, that this rule "did not change what the government must prove, only that the jury, rather than the judge must decide the [relevant factual] question." We also emphasized that the *Apprendi* Court characterized its decision as procedural. *Id.* at 308.[4]

We acknowledge that *Castillo*, unlike *Apprendi*, does not sound very much like a ruling on constitutional criminal procedure. The term "procedure" or its cognates do not appear in *Castillo*. Likewise, the Court neither cites nor mentions the Fifth or Sixth Amendment.

Indeed, *Castillo* reads very much like an ordinary statutory-interpretation decision. For example, the Court framed the question as "whether Congress intended the statutory references to particular firearm types in § 924-(c)(1) to define a separate crime or simply to authorize an enhanced penalty." *Castillo*, 530 U.S. at 123. The Court's answer was that "even apart from the doctrine of constitutional doubt, our consideration of § 924(c)(1)'s language, structure, context, history, and such other factors as typically help courts determine a statute's objectives, leads us to conclude that

---

[3] If the rule of *Castillo* is substantive, hence retroactive, Gonzales would be entitled to relief from sentence, because his sentence plainly violates the rule. Under *Castillo*, he was eligible for the thirty-year sentence only if his firearm was a machinegun, but this essential fact was not alleged in the indictment or contained in the jury instruction. *See Castillo*, 530 U.S. at 123 (explaining that the fact must be alleged in the indictment and proved to the jury beyond a reasonable doubt).

[4] *See, e.g.*, *Apprendi*, 530 U.S. at 475 ("The substantive basis for New Jersey's enhancement is thus not at issue; the adequacy of New Jersey's procedure is."); *id.* at 484 (stating that "the reasonable doubt requirement has a vital role in our criminal procedure for cogent reasons") (quotation marks omitted).

3

the relevant words create a separate *substantive* crime." *Id.* at 124 (emphasis added). Tools such as text, structure, and history are, of course, the hallmarks of statutory interpretation.

*Castillo* therefore appears, at first blush, to announce a substantive rule, as the only circuit to address the question has concluded. In *United States v. Wiseman*, 297 F.3d 975, 981-82 (10th Cir. 2002), the court held that "[t]he *Castillo* court did not announce a new constitutional rule of criminal procedure; it construed a criminal statute to require a jury determination on the type of firearm used by the defendant." The *Wiseman* court reasoned that the rule must be substantive, because "[t]he Court's holding in *Castillo* was based *solely* on its interpretation of § 924(c)(1)." *Id.* at 981 (emphasis added).

We reason, nonetheless, that *Castillo* announced a procedural rule. We recognize that this conclusion may seem counterintuitive. After all, the Court interpreted § 924(c)(1) and held that its "firearm type-related words . . . [are] an *element* of a separate, aggravated crime." *Castillo*, 530 U.S. at 131 (emphasis added). Calling a statutory term an "element" was once a telltale sign of a substantive interpretation of a criminal statute.

After *Apprendi*, however, we no longer can assume that an interpretation of a statute's "elements" is substantive. The distinction between what was once called an "element" and what was once called a "sentencing factor" "is largely irrelevant after *Apprendi*." *United States v. Matthews*, 312 F.3d 652, 662 (5th Cir. 2002), *cert. denied*, 2003 U.S. LEXIS 2433 (U.S. Mar. 24, 2003) (No. 02-9053). These terms now reflect the allocation of fact-finding responsibility between judge and jury.

By calling the "firearm type-related words" of § 924(c)(1) an "element," the Court allocated responsibility for finding this fact to the jury. It did not alter the substantive meaning of the "firearm type-related words."

The terms "element" and "sentencing factor" are therefore conclusions, not reasons for a conclusion.[5] The rule of *Apprendi*, to repeat, is that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. at 476 (quoting *Jones*, 526 U.S. at 243 n.6). *Apprendi* thus requires courts to determine the statute's basic offense and its maximum penalty, and then to determine what other facts in the statute affect the possible penalty.

---

[5] "*Apprendi* repeatedly disparaged the distinction between a fact characterized as a sentencing factor and a fact characterized as an element of a separate offense when the fact increases the statutory maximum penalty." *Matthews*, 312 F.3d at 662 & n. 13 (collecting quotations). The Supreme Court has reiterated this principle in subsequent *Apprendi* cases.

"As to elevation of the maximum punishment . . . *Apprendi* repeatedly instructs in that context that the characterization of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative of the question 'who decides,' judge or jury." *Ring v. Arizona*, 536 U.S. 584, ___, 122 S. Ct. 2428, 2441 (2002). "[T]he fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receivesSSwhether the statute calls them elements of the offense, sentencing factors, or Mary JaneSSmust be found by the jury beyond a reasonable doubt." *Id.* at ___, 122 S. Ct. at 2444 (Scalia, J., concurring).

4

If these facts do not increase the maximum, they may be found by a judge; if they do, they must be alleged in the indictment and found by a jury. At this point, the court, as a shorthand for its reasoning, may attach the term "sentencing factor" to the former and "element" to the latter. *Cf. Castillo*, 530 U.S. at 123-24. What matters, though, is the effect of a fact on the statutory maximum.

This *Apprendi* analysis can resemble substantive statutory interpretation, because the court must use traditional tools to identify the basic offense and its penalty, as well as any facts that affect the penalty. The Court in *Castillo* engaged, albeit implicitly, in precisely this kind of *Apprendi* analysis.[6]

The *Castillo* Court, 530 U.S. at 124, used the text and structure of § 924(c)(1) to identify "the basic federal offense of using or carrying a gun during and in relation to a crime of violence [or drug trafficking crime]," which carried a five-year sentence. The Court then relied on this and other tools to decide that the kind of firearm used or carried is a fact that increases the statutory maximum. *Id.* at 125-31. The Court concluded by calling this fact

"an element of a separate, aggravated crime." *Id.* at 131. As the Court's reasoning demonstrates, though, the conclusional term "element" merely means that "the indictment must identify the firearm type and a jury must find that element proved beyond a reasonable doubt." *Id.* at 123.

In other words, *Apprendi* analysis does not alter the meaning of the fact to be found, but instead allocates fact-finding responsibilities between judge and jury. Consider Gonzales's eligibility for a thirty-year sentence under § 924(c)(1) before and after *Castillo*. In both instances, *someone* had to find that he carried a machinegun, not a simple firearm. The only difference, after *Castillo*, is that, for the thirty-year sentence to be imposed, the jury, not the court, must find this fact.

The opening sentence reveals this truth: "In this case we once again decide whether words in a federal criminal statute create offense elements (determined by a jury) or sentencing factors (determined by a judge)." *Castillo*, 530 U.S. at 121. And, as we explained in *Brown*, 305 F.3d at 309, the responsibility for fact-finding is a quintessential procedural rule, not "a substantive change in the law."

It is useful, in this regard, to contrast *Castillo* with *Bailey v. United States*, 516 U.S. 137 (1995). There, the Court interpreted the meaning of "use" in § 924(c)(1) to mean "*active employment* of the firearm by the defendant." *Id.* at 143. The Court contrasted this definition with "mere possession of a firearm by a person who commits a drug offense." *Id.* Unlike *Castillo*, *Bailey* therefore altered the substantive meaning of a key term in § 924(c)(1), as the federal courts quickly learned from the avalanche of § 2255 motions. Thus, *Bailey* necessarily applied retroactively

---

[6] We recognize that *Castillo* preceded *Apprendi* by three weeks. We sometimes emphasize *Apprendi*, however, because it addresses the same issue, i.e., the constitutional allocation of fact-finding responsibility, more generally and thoroughly than does *Castillo*. Moreover, the Court grappled with this issue repeatedly before deciding *Castillo* and *Apprendi*. *See, e.g.*, *Jones v. United States*, 526 U.S. 227 (1999); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). Thus, we safely may assume the Court had all its caselaw in mind when it issued *Castillo* and *Apprendi*. *See United States v. Torres*, 282 F.3d 1241, 1246 (10th Cir. 2002) (observing that *Castillo* belongs to "the *Apprendi* family of cases").

5

on collateral review. *Bousley*, 523 U.S. at 620.

Finally, our precedents support the view that *Castillo* announced a procedural rule. In *United States v. Shunk*, 113 F.3d 31 (5th Cir. 1997), we concluded that *United States v. Gaudin*, 515 U.S. 506 (1995), announced a procedural rule. In *Gaudin*, *id.* at 511, the Court had held that the materiality element of 18 U.S.C. § 1001 had to be found by the jury, not the court. We noted that "*Gaudin* explicitly states that the rule it created was procedural." *Shunk*, 113 F.3d at 35. More importantly, however, we also explained that "*Gaudin* did not change what the Government must prove; materiality was always an element of a § 1001 offense. Instead, *Gaudin* changed the party to whom the Government must prove materialitySSfrom judge to jury." *Id.* (citation omitted).

Likewise, *Castillo* did not change the necessary factual showing for a thirty-year sentence under § 924(c)(1). The government always had to prove that the firearm used was a machinegun; *Castillo* merely changed "the party to whom the government must prove" that the firearm used was a machinegun.[7]

Even *United States v. McPhail*, 112 F.3d 197 (5th Cir. 1997), in which we concluded (before *Bousley*) that *Bailey* announced a substantive rule, indicates, by way of contrast, that *Castillo* announced a procedural rule. The *McPhail* court explained, in three different ways, why the rule of *Bailey* was

substantive. Most basically, the "decision in *Bailey* articulates the substantive elements" of the conduct criminalized by § 924(c)(1). *McPhail*, 112 F.3d at 199. That is to say, *Bailey* "explains what conduct is, and always has been, criminalized by [§ 924(c)(1)]." *Id.* This kind of holding "is a substantive, non-constitutional decision concerning the reach of a federal statute." *Id.*

These explanations all accurately portray the rule of *Bailey* but not of *Castillo*. In *Castillo* the Court did not articulate the elements of § 924(c)(1), or explain what conduct it criminalizes, or affect its reach. Unlike *Bailey*, therefore, *Castillo* announced a procedural rule.[8]

In sum, *Castillo* shifted the fact-finding responsibility from judge to jury but did not alter the meaning of the fact to be found. *Castillo* does not determine what conduct the law criminalizes, but rather tends to ensure an accurate conviction of and sentence for conduct that the law criminalizes. Both before and after *Castillo*, § 924(c)(1) imposed a thirty-year sentence for using or carrying a machinegun during a drug trafficking crime, but *Castillo* now tends to ensure that these sentences will be imposed in a more accurate fashion.

---

[7] By holding that *Gaudin* announced a procedural rule, *Shunk* also supports what might seem a peculiar proposition: The rule of a case may be procedural even if that rule applies only to a single statute.

[8] *See also United States v. Lopez*, 248 F.3d 427, 432 (5th Cir.) (relying on these three passages from *McPhail* to conclude that *Richardson v. United States*, 526 U.S. 813 (1999), announced a substantive rule regarding the scope of 21 U.S.C. § 848(a)), *cert. denied*, 534 U.S. 898 (2001). Irrespective of whether *Lopez*'s reading of *Richardson* is correct, *Lopez* does not purport to apply a test different from that of *Bousley*, *McPhail*, and *Shunk*, and, in any event, *McPhail* and *Shunk*, like *Bousley*, preceded *Lopez* and hence remain binding on this panel.

6

The Court's unavoidable use of traditional statutory-interpretation tools may efface this critical distinction—so much so that the Tenth Circuit mistakenly held in *Wiseman* that the rule of *Castillo* is substantive[9]—but the Supreme Court's analysis undermines neither the distinction nor the reasoning of *Brown*, *Shunk*, and *McPhail*. Thus, *Castillo* is a procedural rule subject to the *Teague* framework.

### B.

Gonzales argues, in the alternative, that the rule of *Castillo* fits within the second *Teague* exception, which makes retroactive new procedural rules that "require[ ] the observance of those procedures that are implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 311 (quotation marks and alteration omitted). The Court described such rules as "watershed rules of criminal procedure," *id.*, that are "central to an accurate determination of innocence or guilt," *id.* at 313. Because we are confident that the rule of *Castillo* is not a watershed rule of criminal procedure, we decline to apply it retroactively.

*Castillo* is nothing more than a particular manifestation of *Apprendi*. *See Torres*, 282 F.3d at 1246 (observing that *Castillo* belongs to "the *Apprendi* family of cases"). *Apprendi* requires any fact that increases the statutory maximum to be alleged in the indictment and proven to the jury beyond a reasonable doubt.

*Castillo* requires that the kind of firearm used in a § 924(c)(1) offense be alleged in the indictment and proven to the jury beyond a reasonable doubt. Gonzales more or less admits this point, because he relies on *Apprendi* and *Castillo* for the same arguments.

In *Brown*, 305 F.3d at 309-10, we held that *Apprendi* is not a watershed rule of criminal procedure. We reasoned that *Apprendi* improves the accuracy of the sentence, not the determination of guilt or innocence of the offense, and does not alter our understanding of the bedrock elements essential to a fundamentally fair proceeding. *Id.* at 309. This reasoning also applies to *Castillo*, which neither affects the accuracy of the determination of guilt or innocence of a § 924(c)(1) offense nor reworks our basic understanding of "ordered liberty."[10] In short, if the general rule of *Apprendi* does not fit the second *Teague* exception, nor does a particular manifestation of that rule in *Castillo*.

The order denying the § 2255 motion is AFFIRMED.

---

[9] The Tenth Circuit contradicted itself in the key sentence of *Wiseman*: "The *Castillo* Court did not announce a new constitutional rule of criminal procedure; it construed a criminal statute to require a jury determination on the type of firearm used by the defendant." *Wiseman*, 297 F.3d at 981-82. The clause before the semicolon states that *Castillo* did not announce a procedural rule, but the clause after the semicolon describes a procedural rule.

[10] *See Shunk*, 113 F.3d at 37 ([O]ne can easily envision a system of 'ordered liberty' in which certain elements of a crime can or must be proved to a judge, not to a jury.").

7