United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 28, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-10104
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY JOE EMERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 6:98-CR-103-C
_____

Before JONES, MAGILL,[*] and SMITH, Circuit Judges.

PER CURIAM:[**]

Timothy Joe Emerson has appealed his convictions for possession of a firearm while under a restraining order in violation of 18 U.S.C. § 922(g)(8). Previously this court reversed the district court's order dismissing the indictment on

---

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

constitutional grounds.  See United States v. Emerson, 270 F.3d 203, 264-65 (5th Cir. 2001).

Emerson first contends that his convictions should be reversed because the facts of the case establish the defense of entrapment by estoppel and that his attorney rendered ineffective assistance in failing to request a jury instruction on that defense.  Emerson raised these questions for the first time in his motions for judgment of acquittal and for a new trial.

Because Emerson did not request a jury instruction on the defense of entrapment by estoppel, we review for plain error the district court's failure to give the instruction.  See United States v. Hickman, 331 F.3d 439, 443 (5th Cir. 2003).  The district court's denial of the motion for judgment of acquittal is reviewed de novo.  See United States v. Izydore, 167 F.3d 213, 219 (5th Cir. 1999).  The denial of a motion for a new trial, a disfavored motion, is reviewed for an abuse of discretion.  See United States v. Sullivan, 112 F.3d 180, 182 (5th Cir. 1997).  Although questions of ineffective assistance of counsel are generally not resolved on direct appeal, we reach the issue in this case because the issue was raised in Emerson's motion for a new trial and because the record has been developed adequately.  See United States v. Villegas-Rodriguez, 171 F.3d 224, 230 (5th Cir. 1999).

Under governing Fifth Circuit law, the defense of entrapment by estoppel was not available to Emerson.  Emerson was not "actively misled" by a duly empowered federal official about

2

the legality of his possession of firearms while under the state restraining and protective orders.  See United States v. Ortegon-Uvalde, 179 F.3d 956, 959 (5th Cir. 1999); United States v. Spires, 79 F.3d 464, 466-67 (5th Cir. 1996).  This court has already held that Emerson was placed on constructive notice of the existence of federal firearms laws pertaining to domestic relations cases.  See United States v. Emerson, 270 F.3d at 216.  To the extent that Emerson actually perceived a conflict between his duties under the state court order and federal law, Emerson could have sought clarification from the state court.  It would not have been objectively reasonable for Emerson to rely on the state court's order requiring him not to dispose of property as a pretext for possessing firearms.  See United States v. Trevino-Martinez, 86 F.3d 65, 69 (5th Cir. 1996).  No error has been shown, plain or otherwise. Because Emerson has not shown that he has a valid entrapment-by-estoppel defense, he cannot show that his attorney's failure to request an instruction on the defense or to object to the lack of an instruction was professionally unreasonable or that he was prejudiced.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).

Next, Emerson has raised various constitutional challenges to the legality of 18 U.S.C. § 922(g)(8).  The constitutionality of the statute was considered in the prior appeal in this case.  See Emerson, 270 F.3d at 212-72.  Under the law-of-the-case doctrine, "an issue of fact or law decided on appeal may not be

3

reexamined . . . by the appellate court on a subsequent appeal." United States v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002).

The argument that Congress exceeded its authority under the Commerce Clause by enacting 18 U.S.C. § 922(g)(8) has been rejected by this court. See Emerson, 270 F.3d at 217; see also United States v. Pierson, 139 F.3d 501, 503 (5th Cir. 1998). Citing a footnote in our prior opinion, see 270 F.3d at 217 n.8, Emerson argues that his possession of firearms was purely passive as the firearms were purchased prior to 1993 and that, since that date, the weapons had never left Tom Green County, Texas. Emerson argues also that counts one and two charged him with "purely passive" possession of firearms on December 10, 1998. These arguments are without merit. "Possession of a firearm is active, not passive, conduct." United States v. Shelton, 325 F.3d 553, 564 (5th Cir. 2003). Moreover, Emerson never attempted to dispute that the weapons charged in the indictment never traveled in interstate commerce after 1994. See Emerson I, 270 F.3d at 217, n.8; see also United States v. Lee, 310 F.3d 787, 788 (5th Cir. 2002); United States v. Daugherty, 264 F.3d 513, 518 (5th Cir. 2001).

Emerson's Tenth Amendment argument is barred because it was waived in the prior appeal, see Emerson I, 270 F.3d at 218. "The waiver doctrine bars consideration of an issue that a party could have raised in an earlier appeal in the case." United States v. Castillo, 179 F.3d 321, 326 (5th Cir. 1999), rev'd on other grounds, 530 U.S. 120 (2000). His contention that this statute

4

violates the Second Amendment was rejected in the court's prior opinion. See Emerson, 270 F.3d 260-63.

Emerson contends that 18 U.S.C. § 922(g)(8) violates the Fifth Amendment guarantee of due process, facially and as applied to him. Emerson complains: (1) that the statute does not require express notice of the deprivation of the right to keep and bear arms; (2) that application of the statute in this case was fundamentally unfair because it was impossible for him to maintain the assets of the marital estate and to divest himself of possession of his guns; and (3) that the statute criminalizes passive activity in violation of the rule in Lambert v. People of the State of California, 355 U.S. 225, 228-30 (1957). Emerson distinguishes between his firearms possession on November 16, 1998, as charged in count three of the superseding indictment, and his possession on December 10, 1998, as charged in counts one and two, suggesting that the former possession was "active" and the latter was "passive."

As was previously discussed, a similar argument was rejected in Shelton, 325 F.3d at 564, in which we clarified that "[p]ossession of a firearm is active, not passive, conduct." Moreover, Emerson's first and third contentions have been rejected and are without merit. In Emerson I, 270 F.3d at 216-17, the court noted in a footnote that this case does not present a situation in which possession of the firearm was incident to a good faith effort by the defendant to rid himself of continued possession of a

5

previously possessed firearm.  <u>Id</u>. at 216 n.6.  The panel also rejected the <u>Lambert</u> argument.  <u>Id</u>.  Application of the statute to Emerson was not fundamentally unfair.

Regarding his sentence, Emerson objects to the assessment of a criminal history point pursuant to U.S.S.G. § 4A1.1(c). Because, as he admits, assessment of the criminal history point did not affect his sentence, any error by the district court was harmless.  <u>See</u> <u>Williams v. United States</u>, 503 U.S. 193, 202–03 (1992); <u>United States v. Jackson</u>, 22 F.3d 583, 585 (5th Cir. 1994).

Emerson also objected in the district court that U.S.S.G. § 2K2.1(a)(5) violates the Second Amendment as applied to him.  The probation officer concluded that Emerson's base-offense level was 18, under U.S.S.G. § 2K2.1(a)(5), because the offense involved a firearm described in 18 U.S.C. § 921(a)(30) (defining the term "semiautomatic assault weapon"), <u>i.e.</u>, a Polytech Model AK47S. Emerson argues that he legally possessed the Polytech AK47S prior to entry of the state court order.  He argues also that the Guideline makes no distinction between semiautomatic assault weapons grandfathered under 18 U.S.C. § 922(v) and those which are not.  In so doing, he contends, "§ 2K2.1(a)(5) artificially in-flates the punishment for those who lawfully exercise their Second Amendment right to own a grandfathered semiautomatic assault weapon and later become subject to a prohibition . . . ."  This argument is without merit.

6

Under 18 U.S.C. § 922(v)(1) it is generally unlawful to possess a semiautomatic assault weapon. The assault-weapon ban does not apply "to the possession or transfer of any semiautomatic assault weapon otherwise lawfully possessed under Federal law on the date of the enactment" of subsection 922(v). See 18 U.S.C. § 922(v)(2). The exemption in 18 U.S.C. § 922(v)(2) applies only to prosecution for violations of 18 U.S.C. § 922(v)(1). Congress enacted 18 U.S.C. § 922(v) to address the increased threat and harm resulting from criminals and mentally deranged individuals using semiautomatic assault weapons to commit unlawful violence. See H. R. REP. NO. 103-489, 12-20 (1994), reprinted in 1994 U.S.C.C.A.N. 1801, 1820-28. The sentencing guideline does not exempt pre-ban weapons. See U.S.S.G. § 2K1.2(a)(5). The Sentencing Commission's decision to punish offenses involving such weapons more severely is "reasonable and not inconsistent with the right of Americans generally to keep and bear their private arms . . . ." Emerson, 270 F.3d at 261.

For the foregoing reasons, the judgment and sentence are **AFFIRMED.**