

Villanova University School of Law Digital Repository

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-31-2008

# USA v. Tidwell

Precedential or Non-Precedential: Precedential

Docket No. 02-3139

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Tidwell" (2008). *2008 Decisions.* Paper 1337.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1337

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3139
_____

UNITED STATES OF AMERICA,

Appellee

v.

TYRONE TIDWELL,

Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 94-cr-00353-1)
District Judge: Hon. Bruce W. Kauffman

_____

Argued April 24, 2007
BEFORE: McKEE, AMBRO, <u>Circuit Judges</u>,
and ACKERMAN, <u>Senior District Court Judge</u>[*]

---

[*] The Honorable Harold A. Ackerman, Senior District
Judge for the United States District Court of New Jersey, sitting by
designation.

(Opinion filed March 31, 2008)

JEFFREY M. LINDY, ESQ. (Argued)
MICHAEL DROSSNER, ESQ.
PAUL M. GEORGE, ESQ.
Lindy & Associates, P.C.
1800 J.F.K. Boulevard, Suite 1500
Philadelphia, PA 19103
Attorneys for Appellant


PATRICK L. MEEHAN, ESQ.
United States Attorney
ROBERT A. ZAUZMER, ESQ. (Argued)
Assistant United States Attorney
Chief of Appeals
SETH WEBER, ESQ.
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Attorneys for Appellee

_____

OPINION

_____

McKEE, <u>Circuit Judge</u>.

Tyrone Tidwell challenges the mandatory sentence of life imprisonment that was imposed pursuant to 21 U.S.C. § 848(b), after he pled guilty to engaging in a "continuing criminal enterprise," in violation of 21 U.S.C. § 848(c). For the reasons that follow, we will affirm.

## I. BACKGROUND

On September 7, 1994, a grand jury returned a 23-count indictment charging Tidwell with, *inter alia*, one count of engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848. Tidwell initially pled not guilty and proceeded to trial before a jury. However, during the government's case-in-chief, Tidwell informed the court that he wished to change his plea. Tidwell agreed to plead guilty to "Count 2–Engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848." Neither Count 2, nor any other provision of the indictment,

3

specifically charged Tidwell with violating § 848(b) (being a "Super Kingpin"), or any other subsection of § 848. Nor did the indictment allege any facts beyond those necessary to establish a violation of § 848(c), the definitional provision of § 848.

The resulting plea agreement provided that, based on Tidwell's agreement to plead guilty to Count 2, the district court "may impose the . . . statutory maximum sentence [of] Mandatory Life Imprisonment, a $4,000,000 fine, and a $50 special assessment." Tidwell also stipulated that his base offense level would be "based upon the distribution of [more than] 150 kilograms of cocaine." Accordingly, during the ensuing Rule 11 colloquy, the prosecutor informed Tidwell that his guilty plea to Count 2 subjected him to a mandatory sentence of life imprisonment. After Tidwell acknowledged that he understood the potential penalties, the court added: "to the extent there are mandatory punishments for these offenses, I will

4

have to impose those punishments unless there is some basis . . . not to do so." Joint Appendix, at 207. The judge explained that if the government did not file any motion for a downward departure, "then there are mandatory sentences, mandatory life sentences, and I'm not going to have the ability to depart from that."[1] After again acknowledging that he understood, Tidwell formally pled guilty to "engaging in a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848." The court accepted the plea and sentenced Tidwell to life imprisonment on Count 2, as mandated by 21 U.S.C. § 848(b),

---

[1] Tidwell's agreement provided for the possibility that the government would file a motion for a downward departure under U.S.S.G. § 5K1.1 (substantial assistance), and a motion under 18 U.S.C. § 3553(e) (authorizing a sentence below the otherwise applicable mandatory minimum based upon cooperation with the government), depending upon the quality of any subsequent cooperation. However, neither motion was ever filed because the government was not satisfied with Tidwell's cooperation.

and concurrent terms of imprisonment on the remaining counts.

As we have noted, the indictment did not specifically charge Tidwell with violating § 848(b), nor did it allege that Tidwell had engaged in conduct that would trigger the application of § 848(b). Rather, the indictment merely alleged that Tidwell had engaged in a "continuing criminal enterprise," as defined in 21 U.S.C. § 848(c). Moreover, during the Rule 11 colloquy Tidwell only agreed that he was pleading guilty to a continuing criminal enterprise in violation of 21 U.S.C. § 848(c). He did not plead guilty to violating 21U.S.C. § 848(c), nor did he admit the conduct proscribed by that section. The relevant provisions of 21 U.S.C. § 848 provide:[2]

---

[2]As we will explain, the structure of the statutes we discuss is often very relevant to our inquiry. Accordingly, for convenience, we will frequently set forth much more of the text of a statute than would otherwise be appropriate.

6

(a) Penalties; forfeitures. Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment ... except that if any person engages in such activity after one or more prior convictions . . . under this section have become final, he shall be sentenced to a term of imprisonment which may not be less than 30 years and which may be up to life imprisonment . . . .

(b) Life imprisonment for engaging in a continuing criminal enterprise. Any person who engages in a continuing criminal enterprise shall be imprisoned for life and fined in accordance with subsection (a), if--

> (1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; and

> (2)(A) the violation referred to in subsection (c)(1) involved at least 300 times the quantity of [the controlled substance], . . . or any other enterprise in which the defendant was the principal or one of several principal administrators, organizers, or leaders, received $10 million dollars in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution of a substance described in section 401(b)(1)(B) of this Act [21 USCS § 841(b)(1)(B) ].

(c) "Continuing criminal enterprise" defined. For purposes of subsection (a), a person is engaged in a continuing criminal enterprise if–

(1) he violates any provision of this title . . . the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this title . . .

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

(d) Suspension of sentence and probation prohibited.

\* \* \*

(e) Death penalty

(1) In addition to the other penalties set forth in this section--

(A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death; and(B) any person, during the commission of, in furtherance of, or while

8

attempting to avoid apprehension, prosecution or service of a prison sentence for, a felony violation of this subchapter or subchapter II of this chapter who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of any Federal, State, or local law enforcement officer engaged in, or on account of, the performance of such officer's official duties and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

\* \* \*

21 U.S.C. § 848.

The district court reasoned that § 848(b) sets forth sentencing factors that govern sentences imposed for violating the substantive offense defined in § 848(c), rather than elements of a separate crime. Accordingly, the court concluded that the government did not have to charge Tidwell with violating subsection (b), and that the conduct proscribed therein need only be established by a preponderance of the evidence.

9

Tidwell's primary argument on appeal is that the life sentence that is mandated by § 848(b) could not be constitutionally imposed because the factual basis was not charged in the indictment, nor proven beyond a reasonable doubt. [3]

## II. DISCUSSION

Congressional intent controls whether § 848(b) contains elements of a separate offense as Tidwell maintains, or merely sentencing factors as the district court concluded. *United States v. Jones*, 526 U.S. 227 (1999). In order to discern that intent, we must examine the language and structure of the statute, its subject matter, context and legislative history. *See, e.g., Almendarez-Torres v. United*

---

[3]Most of the other issues Tidwell raises are contingent upon his claim that § 848(b) contains elements of an offense. Since we reject that argument, we need not discuss those claims.

*States*, 523 U.S. 224, 228 (1998); *Castillo v. United States*, 530 U.S. 120, 124 (2000); *Harris v. United States*, 536 U.S. 545 (2002).  Our inquiry is guided by four Supreme Court decisions wherein the Court discussed the difference between statutory provisions intended as sentencing factors and statutory provisions intended as elements of a crime. We begin our analysis of the legislative intent underlying § 848(b) by discussing each of those decisions.

## A. *Almendarez-Torres*

In *Almendarez-Torres v. United States*, *supra,* the Court held that Congress intended subsection (b)(2) of 8 U.S.C. § 1326 as sentencing factors, rather than elements of a crime. 8 U.S.C. § 1326 provided, in relevant part:

> (a) Subject to subsection (b) of this section, any alien who-
> (1) has been . . . deported . . . , and thereafter

11

(2) enters ..., or is at any time found in, the United States [without the Attorney General's consent or the legal equivalent], shall be fined under title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection-

(1) whose deportation was subsequent to a conviction for commission of [certain misdemeanors], or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both; or

(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both.

The defendant in *Almendarez-Torres* pled guilty to illegally reentering the United States following deportation, in violation of 8 U.S.C. § 1326. At sentencing, he admitted that he had been convicted of three aggravated felonies before being deported. He nevertheless argued that he could not be sentenced under subsection (b)(2) because his

12

indictment did not charge that he had been convicted of an aggravated felony before he was deported. The district court rejected the argument based upon its conclusion that Congress intended prior aggravated felony convictions to be an aggravating sentencing factor rather than an element of the crime. Accordingly, the trial court had held that the prior convictions did not have to be formally charged or proven beyond a reasonable doubt. 523 U.S. at 227-228. The Supreme Court agreed. The Court reasoned that the structure of the statute, its subject matter (recidivism), its context and legislative history, all suggested a congressional intent to enact a sentencing enhancement based upon the defendant's prior record.

The Court explained that recidivism is "as typical a sentencing factor as one could imagine." *Id*. at 230. The

13

Court cited several provisions of the United States Sentencing Guidelines as well as provisions of other federal statutes that increased severity of sentences based on an offender's criminal record. The Court also noted that courts of appeals and district courts have almost uniformly treated one's criminal history as a sentencing factor, rather than as an element of an offense. *Id.*

The Court also reasoned that if Congress had intended subsection (b) to define as elements of a crime, it would not have provided that those penalties be imposed "notwithstanding subsection (a)." Similarly, it would not have been necessary to explain that the maximum sentence proscribed in subsection (a) was "subject to subsection (b)." *Id.* at 231-232.

The Court was also influenced by the fact that when

14

Congress added subsection (b)(2) to 8 U.S.C. § 1396, it changed the title of the statute from "Reentry of deported aliens" to "Reentry of deported aliens: *criminal penalties for reentry of certain deported aliens.*" *Id.* at 234. (emphasis added). Furthermore, the legislative history referred exclusively to creating new penalties rather than creating a new crime, or criminalizing conduct that had not previously been a crime. *Id.*

**B. *Jones v. United States,* 526 U.S. 227 (1999).**

The very next term, the Court decided *Jones v. United States*. There, the Court held that Congress intended the subdivisions of 18 U.S.C. § 2119 as three separate offenses, rather than as three sentencing enhancements. 18 U.S.C. § 2119, provides:

Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported,

15

shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall-

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.     The indictment in

*Jones* did not specify any of the statute's subsections, nor did it allege serious bodily injury. Similarly, the jury did not make any finding that the carjacking involved serious bodily injury. *Jones*, 526 U.S. at 231. Nevertheless, the trial court imposed a twenty five year sentence after finding, by a preponderance of the evidence, that serious bodily injury was involved. *Id.* The Supreme Court reversed. The Court held that Congress intended a carjacking involving serious bodily injury to be one of three separately defined carjacking

16

offenses of escalating severity.

The Court was persuaded that "serious bodily injury" was a separate offense because "carjacking is a type of robbery, and serious bodily injury [had] traditionally been treated by Congress, and by the state legislatures, as defining an element of the offense of aggravated robbery." *Id.* at 235. Congress drafted the legislation against that historical background. *Id.* Moreover, inflicting serious bodily injury or death raised the *statutory maximum* by ten years in subsection (2), and to life imprisonment in subsection (3), thereby exposing offenders to significantly steeper penalties than the conduct proscribed in § 2119(1). Allowing such dramatic increases in punishment without charging the underlying conduct in an indictment and requiring proof beyond a reasonable doubt raised serious constitutional

17

questions.

**C. *Castillo v. United States,* 530 U.S. 120 (2000).**

The Supreme Court next addressed the distinction between sentencing enhancements and elements in *Castillo v. United States.* There, the Court held that Congress intended 18 U.S.C. § 924(c)(1) (relating to the use of a machine gun) to be an element of a crime. The defendants in *Castillo* were convicted of violating 18 U.S.C. § 924, but the indictment did not specify the type of weapon used. At sentencing, the judge found they had used machine guns and hand grenades, and sentenced defendants to the mandatory thirty-year term of imprisonment set forth in 18 U.S.C. § 924(c)(1).

18 U.S.C. § 924 is entitled "Penalties," and the relevant portion of the statute provides as follows:

18

(a)(1) Except as otherwise provided in this subsection, subsection (b), (c), or (f) of this section, . . .

whoever -

(A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter . . . [or]

* * *

(D) willfully violates any other provision of this chapter, shall be fined under this title, imprisoned not more than five years, or both.

(a)(2) Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both.

* * *

(b) Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm . . . in interstate or foreign commerce shall be fined under this title, or imprisoned not more than ten years, or both.

19

(c)(1) Whoever, during and in relation to any crime of violence . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ,. . . be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, . . ., or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machine gun, . . . to imprisonment for thirty years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years, and if the firearm is a machine gun, . . . to life imprisonment without release.

\* \* \*

(c)(3) [defines "crime of violence" for purposes of this subsection]

\* \* \*

(e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony, . . . such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law

\* \* \*

(o) A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than twenty years, fined under this title, or both; and if the firearm is a machine gun or destructive device, or is equipped with a firearm silencer or muffler, shall be imprisoned for any term of years or life.

The Court focused on the structure of the statute

20

because neither the text nor legislative history was helpful. The title ("Penalties") suggested that Congress intended to define penalties for engaging in the conduct proscribed in the first sentence. However, the statute's structure was more indicative of an intent to treat possession of a machine gun as a separate offense. The "basic job of the first sentence is the definition of crimes and the role of the remaining three [sentences] is the description of factors that pertain only to sentencing." *Id.* at 125. Recidivism has historically been regarded as a sentencing factor, as explained in *Almendarez-Torres*. Sentencing factors typically involved offender characteristics or the manner in which a crime was committed. *Id.* at 126. The type of firearm employed was not related to either of those traditional sentencing factors. *Id.* Rather, the kind of weapon used in committing a crime had traditionally been accorded significance beyond

21

sentencing.

The Court concluded that several factors established that Congress intended to regard possession of a machine gun as an element of the crime rather than a sentencing factor. The structure of the statute "strongly suggest[ed] that the . . . first sentence [defines] crimes and the role of the remaining three is the description of factors (such as recidivism) that ordinarily pertain only to sentencing." *Id*. at 125. Second, courts have not "traditionally used firearm types . . . as sentencing factors, . . ." *Id*. Third, asking a jury to determine if the defendant "used or carried a machine gun would rarely complicate a trial or risk unfairness." *Id.* Moreover, a contrary rule would risk creating "a conflict between the judge and the jury." *Id*. at 128. Fourth, to the extent the legislative history was helpful, it seemed to

22

describe "offense conduct." *Id*. at 30. "Fifth and finally, the length and severity of " the mandatory minimum sentence "weigh[ed] in favor of treating such offense-related words as referring to elements." *Id.* at 131.

Moreover, given the extent that Congress increased punishment, the Court "assume[d] a preference for traditional jury determination." *Id.* The force of all these considerations resulted in a "stronger 'separate crime' case than either *Jones* or *Almendarez-Torres* - cases in which [the Court was] closely divided as to Congress' likely intent." *Id.*[4]

---

[4] Just three weeks after deciding *Castillo*, the Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2005). There, the Court held that "'other than . . . a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum, whether the statute calls it an element or a sentencing factor, 'must be submitted to a jury, and proved beyond a reasonable doubt.'" *Harris v. United States*, 536 U.S. at 551 (quoting *Apprendi*, 530 U.S. at 490).

23

**D. *Harris v.United States,* 536 U.S. 545 (2002).**

In *Harris v.United States,* the Court had to revisit congressional intent underlying 21 U.S.C. § 924. Harris was convicted of having "an unconcealed semiautomatic pistol at his side" during an illegal sale of narcotics in violation of 21 U.S.C. § 924(c)(1)(A). The relevant statutory text provides:

Any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime-

(I) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

21 U.S.C. §924.

Harris was charged only with violating "the statute's

24

principal paragraph." At the sentencing hearing, the court relied upon a recommendation in the presentence report to sentence Harris to 7 years in prison because the trial court concluded, based upon a preponderance of the evidence, that Harris had brandished a firearm during the drug sale. Harris appealed, arguing that "brandishing" a firearm was an element requiring formal charge in the indictment and proof beyond a reasonable doubt. The Court of Appeals affirmed, and the Supreme Court granted *certiorari.*

The Supreme Court first looked at the structure of the statute. The Court explained that

[section] 924(c)(1)(A) begins with a lengthy principal paragraph listing the elements of a complete crime- the basic federal offense of using or carrying a gun during and in relation to a violent crime or drug offense. Toward the end of the paragraph is the word "shall," which often divides offense-defining provisions from those that specify sentences. And following "shall" are the separate subsections, which explain how defendants are to be

25

sentenced.

*Id*. at 552 (some internal quotation marks omitted).

The Court concluded that § 924(c)(1)(A) followed that formula: "Subsection (i) sets a catchall minimum and certainly adds no further element. Subsections (ii) and (iii), in turn, increase the minimum penalty if certain facts are present, and those subsections do not repeat the elements from the principal paragraph." *Id*. at 552-53. Based on that structure, the Court "presume[d] that [the] principal paragraph defines a single crime and [the statute's] subsections identify sentencing factors." *Id.* at 533. However, the Court did not rest its holding on that presumption. Rather, the Court explained that even though the structure and "look . . . suggested that the numbered subsections are only sentencing provisions, the text might provide compelling evidence to the contrary, [as] illustrated

26

by the . . . decision in *Jones*. . .". *Id*. (internal quotation marks omitted). As discussed above, the statute there "had a similar structure," yet the Court concluded that Congress intended to "set[] out the elements of numerous offenses." *Id*. Accordingly, the Court focused on the text of § 924(c)(1)(A).

That text reinforced the Court's conclusion that the subsections were intended as sentencing factors rather than separate offenses. There is no tradition of treating brandishing a weapon as a separate offense. *Jones*, 536 U.S. at 553 (citing United States Sentencing Commission, Guidelines Manual §§ 2A2.2(b)(2), 2B3.1(b)(2), 2B3.2(b)(3)(A), 2E2.1(b)(1), 2L1.1(b)(4)). Rather, courts have traditionally regarded such conduct as a sentencing factor.

27

Moreover, the disputed provision "alters only the minimum, the judge may impose a sentence well in excess of seven years, whether or not the defendant brandished the firearm." *Id*. This was therefore "consistent with traditional understandings about how sentencing factors operate; *the required findings constrain, rather than extend,* the sentencing judge's discretion." *Harris*, 536 U.S. at 554 (emphasis added).

There was nothing to suggest that Congress intended to alter past practices in enacting § 924(c)(1)(A) by converting a factor that had historically been relevant only to punishment into an element of a crime.

**III. Tidwell's sentence under 21 U.S.C. § 848(b).**

With this background as our compass, we turn to the

statute involved here.[5]  As we noted at the outset, we examine the structure, format and text to determine if Congress intended § 848(b) as a sentencing enhancement or as elements of a crime. To the extent that we find the statute ambiguous, we also examine the legislative history.  Our review of the district court's ruling is plenary.  *See Gibbs v.*

---

[5]We have not fully considered this issue until now.  We summarily affirmed the district court's conclusion that § 848(b) is a sentencing enhancement in in *United States v. Dumas*, 1992 WL 210156 (E. D. Pa. Aug. 20, 1992).  *See* 5 F.3d 1491 (3d Cir. 1993).  We declined to reach the issue in *United States v. Riddick*, 195 F.3d 505, 507 n.1 (3d Cir. 1998) (affirming defendant's sentence on other grounds).

Two other Courts of Appeals have briefly considered the issue and reached opposite conclusions to each other. *See United States v. Kramer*, 955 F.2d 479, 484 n.4 (7th Cir. 1992), and *United States v. Torres*, 901 F.2d 205, 229 (2d Cir. 1990).

The only other Court of Appeals that has engaged in substantive analysis of § 848(b) reached the same conclusion we reach here. *See United States v. Hardin*, 209 F.3d 652 (7th Cir. 2000), *cert. denied*, 531 U.S. 1153 (2001).  The Court in *Hardin* relied heavily on *Jones.*

*Cross*, 160 F.3d 962, 964 (3d Cir. 1998).

**A. Titles, Text and Structure**.

Section 848(a) is titled "Penalties, forfeitures." Section 848(b) is titled "Life imprisonment for engaging in a continuing criminal enterprise;" and § 848(c) is titled, "'Continuing criminal enterprise' defined." This suggests that Congress intended to define the crime of CCE in § 848(c), that it set out the applicable penalties for that crime in subsection (a), and that it intended to mandate an enhancement when a defendant commits the offense of CCE in the manner set forth in subsection (b). That conclusion is tenuous because a statute's title and heading are not always dispositive of congressional intent. *See Castillo*, 530 U.S. at 125 ("In this case, however, the section's title cannot help, for Congress already has determined that at least some

30

portion of § 924 including § 924(c) itself, creates . . . not penalty enhancements, but entirely new crimes.") Nevertheless, our conclusion with respect to the headings is bolstered by our analysis of the text and structure of the statute.

It is, however, clear from the text of the statute that if the government can prove beyond a reasonable doubt that a defendant has engaged in the conduct set forth in subsection (c), it has established a continuing criminal enterprise violation. Subsection (a) sets forth the penalty for that crime as follows: "[a]ny person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment, . . . except that if any person engages in such activity after one or more prior

31

convictions . . . under this section have become final, he shall be sentenced to a term of imprisonment which may not be less than 30 years and which may be up to life imprisonment[.]" 21 U.S.C. § 848(a). Thus, Congress relied upon the traditional sentencing factor of recidivism to limit a sentencing court's discretion and require an enhanced mandatory minimum sentence based upon a prior conviction. However, prior record is not the only factor Congress used to limit the sentencing court's discretion. Congress also restricted sentencing discretion by requiring a sentence of life imprisonment depending on the level of involvement in, and the size of the CCE, as specified in subsection (b). Thus, a judge *must* impose a sentence of life imprisonment if a defendant does not merely engage in a continuing criminal enterprise but is its " . . . organizer . . . or leader," and the quantity of illegal drugs involved or gross receipts received

32

exceeds a defined threshold.  21 U.S.C. § 848(b).

We realize that the structure of § 848 is unique because the substantive offense is set forth in the middle of the statute, § 848(c), rather than at the beginning.  The sentencing factor the Supreme Court has found most persuasive in establishing congressional intent - recidivism - is contained in the first paragraph, subsection (a), even though the conduct that subjects a defendant to that enhancement is defined two paragraphs later.

Significantly, except for the death penalty provision in subsection 848(e),  none of the provisions concerning sentencing stands alone.[6]  Rather, they each depend on the

---

[6]For convenience, we once again set forth the relevant text of § 848(e):

(e) Death penalty

33

criminal conduct defined in subsection (c). *See United States v. Thunder Hawk*, 127 F.3d 705, 708 (8th Cir. 1997) (a sentencing enhancement "cannot stand alone; it is conditioned upon conviction for the underlying offense"

_____

(1) In addition to the other penalties set forth in this section--

(A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills . . .[,] shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death; and

(B) any person, during the commission of . . . a felony violation of this subchapter or subchapter II of this chapter who intentionally kills . . .[,] shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

34

citing cases).

Moreover, our interpretation of the text is reinforced by the fact that Congress and the courts have traditionally viewed the size of a criminal enterprise, and a defendant's role within it, as sentencing factors. *See Harris,* 536 U.S. at 553 ("tradition and past practice . . . were perhaps the most important guideposts . . . in *Jones*"); *see also McMillan v Pennsylvania,* 477 U.S. 79, 90 (1986) (the factor had not "historically been treated in the Anglo-American tradition as requiring proof beyond a reasonable doubt.")  The size and scope of the defendant's criminal enterprise are nothing more than the manner in which [the] basic crime was carried out. . .".  *See Castillo*, 530 U.S. at 126 ("Traditional sentencing factors often involve either characteristics of the offender, such as recidivism, or special features of the

35

manner in which a basic crime was carried out (*e.g.,* that the defendant abused a position of trust or brandished a gun.)"). Thus, it is not likely that a court would impose the same sentence on a defendant who is a leader of a drug conspiracy as on a defendant who is only involved in small "retail" street-level drug sales. Similarly, a sentencing court would not likely give an organizer of a conspiracy involving a few hundred dollars worth of contraband the same sentence as the organizer of a conspiracy involving tens of millions of dollars worth of contraband. With the exception of the death sentence authorized in § 848 (e), the demarcated penalties contained in § 848 have no more constitutional significance than that. Congress "simply took one factor that has always been considered . . . to bear on punishment. . . and dictated the precise weight" it must receive. *McMillan*, 477 U.S. at 89-90.

The application and role of such sentencing considerations is readily apparent in the sentencing guidelines. U.S.S.G. § 3B1.1 increases the applicable sentencing range based on the number of participants involved and whether the defendant is an "organizer, leader, manager, or supervisor," of the criminal activity. U.S.S.G. § 3B1.2 decreases the range when a defendant's role is "minimal" or "minor." *See United States v. Bierley*, 922 F.2d 1061, 1065 (3d Cir. 1990). Similarly, the guidelines provide for increasingly severe sentences as the quantity of drugs increases. *See* U.S.S.G. § 2D1.1(c)**.** The Guidelines also generally provide for increasing sentences based upon economic gain to the defendant and/or foreseeable economic loss to the victim. *See* U.S.S.G. § 2B1.1(b).

Moreover, a defendant's role in a criminal enterprise

and the amount of money involved were relevant sentencing factors long before Congress adopted the Guidelines. As the court noted in *United States v. Schultz*, 14 F.3d 1093, 1099 (6th Cir. 1994), the "[r]ole in the offense is a traditional determination, made in every sentencing, which long antedates the Guidelines." Similarly, drug quantity has historically been regarded as a sentencing factor, subject only to the recent qualification of *Apprendi.*[7]

Tidwell suggests that because courts have held that the death penalty provision contained in § 848(e) is a separate offense, we must similarly regard §848(b). However, that argument is belied by the very text of § 848.

---

[7]"Other than the fact of a prior conviction, any fact that increases the penalty of a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt " *Blakely*, 542 U.S. at 301 (quoting *Apprendi*, 530 U.S. at 490).

38

As the court explained in *United States v. NJB*, 104 F.3d 630, 633 (4th Cir. 1997), "[t]he language, structure and legislative history of § 848(e)(1) establish that it is a separate offense, not merely a penalty provision." Thus, "[s]everal other subsections of § 848 refer to § 848(e) as a separate offense." *Id.* 21 U.S.C. § 848(i) refers to "an offense under subsection (e) of this section." Section 848(n) lists factors to be considered in imposing a sentence for "an offense under subsection (e)." Section 848(j) refers to proving aggravating and mitigating factors "'when a defendant is found guilty of . . . an offense under subsection (e) of this section." *See NJB*, 104 F.3d at 633." The fact that the statute internally refers to § 848(e) as an "offense" clearly establishes Congress' intent to create a separate crime in § 848(e). In addition, we must never forget that "*death is different* in kind from any other punishment imposed under our system of criminal

39

justice." *Gregg v. Georgia*, 428 U.S. 153, 188 (1976) (emphasis added). Given the qualitative difference between a sentence of death and a sentence of life imprisonment, as well as the text and structure of the statute, we are satisfied that Congress intended subsection 848(b) as a sentencing enhancement rather than elements of a separate offense.

**B.     Legislative History**

Furthermore, even assuming *arguendo* that the text, structure and titles are ambiguous, we would reach the same conclusion based on the legislative history of § 848(b). When Congress added § (b) to the Anti-Drug Abuse Act of 1986, P.L. 99-570, Title I, § 1253, 100 Stat. 3207, it was described as "providing tough new penalties for drug dealers, not as creating new crimes." *United States v. Hardin*, 209 F.3d 652, 658 (7th Cir. 2000), *cert. denied*, 531

40

U.S. 1153 (2001). The debate surrounding subsection (b) centered on creating stiffer penalties for drug crimes. *See, e.g.*, 132 Cong. Rec. S26711 (1986) (statement of Sen. Durenberger) ("This legislation is predominantly a crime bill: interdiction; *stiff penalties*; new authority for law enforcement.") (emphasis added); 132 Cong. Rec. S26834 (1986) ("[t]he bill *strengthens the penalties* for major drug traffickers") (statement of Sen. Nunn) (emphasis added); 132 Cong. Rec. S26728 (1986) ("[T]he measure establishes *tougher penalties* for individuals convicted of drug-related crimes.") (statement of Sen. Bingaman) (emphasis added); 132 Cong. Rec. S26746 (1986) (statement of Sen. Mattingly) ("The bill which we have before us does enhance this nation's law enforcement capabilities. It provides for *stricter penalties* for those who engage in the illegal drug trade.") (emphasis added); 132 Cong. Rec. 31417 (1986)

41

(statement of Sen. Byrd ("it contains *significantly enhanced penalties* for drug crimes.  It requires minimum mandatory sentences, with no parole, no probation.  And it provides for life sentences for major criminals-the drug 'king pins'")) (emphasis added).

### C.    Tidwell's Attempt to Distinguish Precedent

Tidwell disagrees with our interpretation of the cases we have discussed. He claims that an important, if not dispositive consideration in *Jones* supports his view that § 848(b) is a separate offense.  There, the Court did observe that where a provision appears to be a sentencing enhancement, but nevertheless provides for significantly steeper penalties based upon the presence of certain factors, the extent of the increase in punishment can alone suggest a congressional intent to create a separate crime.  *See Jones*,

526 U.S. 227, 233 (1999).

> Accordingly, the Court in *Jones* explained that

> [it is] at best questionable whether the specification of facts sufficient to increase a penalty range by two-thirds, let alone from 15 years to life, was meant to carry none of the procedural safeguards that elements of an offense bring with them for a defendant's benefit. The "look" of the statute, then, is not a reliable guide to congressional intentions . . . .

*Id.* However, Tidwell's argument is wholly unpersuasive because, even absent § 848(b), § 848(a) would still allow for a life sentence to be imposed on any defendant convicted of a CCE. Thus, unlike the sentencing scheme in *Jones*, a sentencing judge's imposition of a mandatory life sentence under subsection (b) neither alters the maximum penalty, nor steeply increases a defendant's exposure. Rather, "it makes the existing maximum sentence [equal to the] minimum

43

sentence . . . for a defendant who played an aggravated role in the CCE." *Hardin*, 209 F.3d at 657.[8]  The life sentence it mandates was already an available sentencing option based upon conviction for violating § 848(c).  Thus, the concern that a defendant is denied "process safeguards" where the available sentence sharply exceeds the punishments otherwise available is not a persuasive consideration here. *See Jones*, 526 U.S. at 233.

Tidwell also relies on *Blakely v. Washington*, 542 U.S. 296 (2004).  There, the Supreme Court held that a judge can not impose a sentence on a criminal defendant that is greater than the maximum sentence authorized by the facts

---

[8]Since we do not believe that § 848(b) is ambiguous, we reject Tidwell's attempt to rely on the principle of constitutional doubt. *See United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909).

44

reflected in the jury verdict or defendant's guilty plea. *See Blakely*, 542 U.S. at 303. The 90-month sentence that was imposed in *Blakely* could not have been imposed based solely on the facts Blakely admitted. Rather, the sentence rested upon the judicial finding at sentencing that Blakely acted "with deliberate cruelty." *Blakely*, 542 U.S. at 298. Here, no such additional fact finding is required because a life sentence was already authorized by Tidwell's plea to § 848 (c).[9] Absent consideration of the additional factors in § 848(b), Tidwell could certainly have hoped for something less than a sentence of life imprisonment, but he had no *right* to anything less. It is a defendant's *right* to a lesser sentence

---

[9] It is now well established in this circuit that facts that only enhance sentences within the range allowed by the jury's verdict (or guilty plea) need not be charged in an indictment or proven beyond a reasonable doubt. *See, United States v. Grier*, 449 F.3d 558 (3d Cir. 2006) (*en banc*).

absent additional fact finding that makes all the difference under the Sixth Amendment. *Blakely*, 542 U.S. at 309.

Tidwell concedes that proof of the additional subsection (b) facts did not increase his maximum sentence. Appellant's Br. at 63. However, he claims that Congress cannot constitutionally require a mandatory minimum sentence that is equal to the maximum sentence, without affording the defendant the Sixth Amendment's procedural protections. This is particularly true, argues Tidwell, when that mandatory minimum is life imprisonment. *Id.* at 64.

Tidwell's argument is foreclosed by the Supreme Court's decision in *McMillan v. Pennsylvania*. In *McMillan*, defendants challenged the constitutionality of sentences imposed pursuant to Pennsylvania's Mandatory Minimum Sentencing Act, 18 Pa. C.S.A. § 9712(a). That statute

46

required a mandatory minimum prison sentence of five years for anyone committing certain offenses "if the person visibly possessed a firearm during the commission of the offense, . . .". 477 U.S. at 82. The defendants argued that visible possession of a firearm was an element of the offense and therefore had to be charged in the indictment and proven to a jury beyond a reasonable doubt. The Supreme Court disagreed. The Court held that the Act merely limited the sentencing court's discretion by requiring a penalty within the range *already available*. No additional findings were required. The legislature "simply took one factor that has always been considered by sentencing courts to bear on punishment . . . and dictated the precise weight to be given that factor." *Id.* at 89-90. Here, as in *McMillan*, the additional fact finding "operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it

47

without the special finding . . .". *Id*. at 88.

Tidwell claims that *McMillan*, as well as *Harris,* are distinguishable because § 848(b) denied the sentencing court any opportunity to impose a sentence within a prescribed range. By contrast, in both *Harris* and *McMillan*, imposition of the mandatory minimum "required the judge to impose a 'specific sentence within the range authorized by the judge's finding that the defendant [was] guilty.'" *Harris*, 536 U.S. at 564 (quoting *Apprendi*, 530 U.S. at 494 n.19). As we have just noted, although Tidwell may have expected that the district court would have discretion to impose a lesser sentence, that expectation does not rise to the level of a constitutional guarantee.[10]

[10]According to Tidwell, pleading guilty to § 848(c) makes no sense if it subjects him to a life sentence pursuant to § 848(b) because he would have had nothing to lose by "rolling the dice" and going to trial. The argument ignores

48

Tidwell also claims that, where the minimum and maximum sentences are identical, the already difficult task of distinguishing *Apprendi* from *McMillan* and *Harris* becomes even more tenuous. However, it is not for us to reconsider *McMillan* and *Harris*, or resolve any tension that may exist between that line of cases, *Apprendi* and its progeny. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[i]f a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." ).[11]

the fact that the court may have been able to impose a lesser sentence based on his "substantial assistance."

[11] *See Harris*, 536 U.S. at 569 (Breyer, J., concurring) ("I cannot easily distinguish *Apprendi* . . . from this case in terms of logic."); *United States v. Grier,* 475 F.3d 556, 575

### D. Stipulation to Drug Quantity.

Finally, Tidwell claims that the stipulation of drug quantity in the plea agreement only extended to calculating his base offense level, and that it was error to rely on it to enhance his sentence pursuant to § 848(b). Tidwell believes that this is the only logical interpretation of the stipulation because the drug quantity would otherwise have required a life sentence and the guideline range would have become irrelevant. The argument again ignores the possibility of motions under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. *See* App. at 16. Had these motions been filed, the sentencing judge would have had discretion and the quantity of drugs

---

(3d Cir. 2007) (Ambro, J., concurring) ("To create a sentencing process that fully carries through on the promise of *Apprendi* and *Blakely*, I believe the Supreme Court would have to overrule at least, *McMillan* [citation omitted] and *Harris* [citation omitted]").

would have become relevant to calculating the correct advisory sentencing range under 18 U.S.C. § 3553(a). *See United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006).

We are also not persuaded to the contrary by Tidwell's reliance on *United States v. Thomas*, 389 F.3d 424 (3d Cir. 2004). There, because we merely discussed the various meanings of an "admission" under *Blakely, Thomas* is not as helpful as Tidwell claims. As we have explained, Tidwell's sentence does not exceed the statutory maximum. *Cf. United States v. Munoz*, 233 F.3d 410, 414 (6th Cir. 2000).

Accordingly, we hold that Congress intended § 848(b) as a sentencing enhancement, not as a separate crime. That does not, however, end our inquiry. Tidwell's claim that he did not know that he was pleading guilty to an offense that

51

carried a mandatory life sentence requires us to determine if his plea comports with the requirements of due process. *See Brady v. United States*, 397 U.S. 742, 748 (1970) (A plea of guilty is constitutionally valid only to the extent it is "voluntary and "intelligent".)

### E. The Voluntariness of Tidwell's Plea.

In order for a guilty plea to comply with the requirements of the Due Process Clause of the Fifth Amendment, it must be knowing, voluntary and intelligent. *Bousely v. United States*, 523 U.S. 614, 618-19 (1998). To that end, Fed. R. Crim. P. 11 provides that: "[b]efore accepting a plea of guilty . . . the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands [,] . . . the maximum possible penalty provided by law . . .". Fed. R.

Crim. P. 11(c). Tidwell claims that his plea violated both the Due Process Clause and Rule 11 because he was not advised that he was pleading guilty to an offense that had a mandatory penalty of life imprisonment. Appellants's Br. at 35-42.[12]

Tidwell argues that the District Court erred by failing to advise him that admitting involvement with 150 kilograms of cocaine triggered a mandatory life sentence absent motions under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1. Tidwell's argument rests in large part upon the fact that the judge told him the following during the colloquy:

> If you don't like the sentence that I give you, you can appeal that. But very often I have

---

[12]Tidwell's argument "bleeds into" the more central question before us which we have discussed above: whether the mandatory sentencing provision in Section 848(b) is a sentencing enhancement or a separate offense.

53

> discretion in these matters, and if you appeal the sentence, you may or may not be successful. But that's the only thing you're going to be able to appeal after today.

App. 195-96. Although this statement standing alone is misleading, any confusion was dispelled by the judge's other admonitions to Tidwell. Throughout the colloquy, Tidwell was advised that his guilty plea exposed him to a mandatory sentence of life imprisonment, and he acknowledged that he understood.

The prosecutor explained: "Mr. Tidwell is pleading to engaging in a continuing criminal enterprise. The maximum sentence . . . is a mandatory life imprisonment . . . ". App. at 185. Tidwell acknowledged that he understood. The judge then explained: "to the extent there are mandatory punishments for these offenses, I will have to impose those punishments unless there is some basis on which I would . .

54

. be able not to do so." *Id.* at 207. The judge also clearly explained that there was no guarantee that the government would file any motion to allow the court to reduce Tidwell's sentence.

> I am assuming that the motion, you're hoping the Government will make with respect to assistance would be a way in which I could go below the mandatory life term and the mandatory 20-year term. But there's no assurance here that, number one, what you do for the Government is going to be deemed by them to be substantial. Number two, that they're going to file a motion. Number three, that I'm going to grant the motion. And, number four, there's no telling how I'm going to view the situation in terms of any departure I might make.

*Id.* at 207. Finally, the judge warned: "[I]f there is not a departure here, then *there are mandatory sentences, mandatory life sentences, and I'm not going to have the ability to depart from that*." *Id.* at 209 (emphasis added).

Tidwell nevertheless pled guilty to "engaging in a

55

continuing criminal enterprise, in violation of Title 21, United States Code, Section 848," and stipulated that the drug quantity exceeded 150 kilograms. App. at 216. Tidwell now complains that the plea agreement did not specifically inform him that the stipulated drug quantity would subject him to the mandatory life sentence in § 848(b). Tidwell overlooks the fact that, when he pled guilty, the judge did advise him that a mandatory life sentence would apply unless the government filed motions that would authorize some sentencing discretion. The court could only advise Tidwell of his maximum exposure, and the court did that. *See Powell*, 269 F.3d at 183 (discussing *United States v. Mustafa*, 238 F.3d 485 (3d Cir. 2001)).

Thus, Tidwell was informed that his guilty plea subjected him to a mandatory sentence that would have to be

imposed unless the government moved for a reduction based on Tidwell's subsequent cooperation. The cooperation was not forthcoming, but that does not alter the fact that Tidwell's plea was knowing, voluntary and intelligent.

## IV. Conclusion

For all of the foregoing reasons, we will affirm the judgment of sentence.