

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-29-2008

# USA v. Mendez

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5526

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Mendez" (2008). *2008 Decisions.* Paper 1119.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1119

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-5526

_____

UNITED STATES OF AMERICA

v.

SANTOS MENDEZ,
a/k/a RED ALERT,
a/k/a RED,
a/k/a JULIO C. VALENTIN,
a/k/a JULIO CESAR MONRROY,
                        Appellant
(D.C. Crim. No. 03-cr-00088-1)

_____

No. 05-5527

_____

UNITED STATES OF AMERICA

v.

SANTOS MENDEZ,
a/k/a RED ALERT,
a/k/a RED,
a/k/a JULIO C. VALENTIN,
a/k/a JULIO CESAR MONRROY,
                        Appellant
(D.C. Crim. No. 03-cr-00087)

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
District Judge:  The Honorable Michael M. Baylson

_____

Submitted Under Third Circuit LAR 34.1(a)
May 6, 2008

Before: SCIRICA, Chief Judge, BARRY and HARDIMAN, <u>Circuit Judges</u>

(Opinion Filed:   May 29, 2008)

OPINION

BARRY, <u>Circuit Judge</u>

Appellant Santos Mendez appeals the judgment of sentence, alleging that one of his two guilty pleas was not made knowingly and intelligently.  We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  For the reasons that follow, we will affirm.

I.

Because we write exclusively for the parties, who are familiar with the facts and proceedings before the District Court, we will revisit them only briefly.  Mendez was the leader of a drug trafficking organization in North Philadelphia that was under FBI investigation.  The street corners Mendez "owned" were within 1,000 feet of a public elementary school.  Mendez controlled the drug activities on these corners using violence and intimidation and personally sold crack cocaine, heroin, cocaine, and marijuana.  In the course of the drug investigation, wiretaps on Mendez's cell phone revealed that he was planning home-invasion robberies targeted primarily at drug traffickers.  In January 2002, a joint task force of the Philadelphia Police Department and the FBI intercepted calls revealing that Mendez and three of his co-defendants planned to rob the home of the

owners of a restaurant using a pizza delivery ruse to gain entry. On January 25, 2002, Mendez and his co-defendants carried out the armed robbery, leaving the victims, a man and his pregnant wife and small child, bound and restrained in the basement. Mendez and his co-defendants left the scene in two vehicles. Police, who were patrolling the area in an effort to find Mendez and prevent the robbery, saw the vehicles, pulled them over, and arrested the occupants, including Mendez. Items from the victims' home were found in the vehicles. The male victim of the robbery later identified Mendez, and one of Mendez's co-defendants confessed and implicated Mendez as the leader and organizer of the robbery.

Mendez and four co-defendants were indicted for conspiracy to affect commerce by robbery in violation of 18 U.S.C. § 1951(a), (b)(1), (b)(3) ("count one"), interference with commerce by robbery in violation of 18 U.S.C. § 1951(a), (b)(1), (b)(3) ("count two"), and using and carrying a firearm during the commission of a violent crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), and 2 ("count three"), and Mendez and one co-defendant were indicted for being felons in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) ("count four"). In a second indictment, Mendez and seven co-defendants were charged with separate drug distribution and related firearm charges arising out of a drug trafficking conspiracy.[1] On November 24, 2003, Mendez entered an

---

[1] Mendez was indicted for conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine and more than 1,000 grams of heroin within 1,000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and 860; using and carrying a firearm during and in relation to a drug crime in violation of 18 U.S.C. §§ 924(c)(1), and 2; and being a felon in possession of a firearm in violation of 18 U.S.C. §§

3

open guilty plea without a plea agreement to all four counts charged in the first indictment. On January 23, 2004, Mendez entered an open guilty plea without a plea agreement to all the counts charged in the second indictment.[2] Mendez does not dispute the validity of the second guilty plea. On the government's motion, the two cases were consolidated for sentencing, and sentence was imposed on December 13, 2005.[3]

## II.

As Mendez did not make any objections when he pled guilty on November 24, 2003 nor did he ever file a motion to withdraw that guilty plea, the standard of review is plain error. United States v. Dixon, 308 F.3d 229, 233 (3d Cir. 2002). Under this standard, Mendez must establish that the error was obvious under the law and affected his substantial rights. Id. at 234. To show that an error affected his substantial rights, he must demonstrate prejudice and prove that had it not been for the error, the outcome

---

922(g)(1), and 2.

[2] The first plea was entered before District Judge Timothy J. Savage, and the second was entered before District Judge Michael M. Baylson, who also conducted the sentencing hearing.

[3] On the first indictment, Mendez was sentenced to 240 months on each of counts one and two, and 120 months on count four, the sentences to run concurrently. On count three, he was given a sentence of seven years to run consecutively. On the second indictment, he was sentenced to life for the drug conspiracy, a mandatory consecutive sentence of 25 years for using and carrying a firearm during a drug trafficking crime, and 120 months imprisonment for the felon in possession of a firearm charge. With the exception of the sentences that were statutorily mandated to run consecutively, all the sentences in both indictments were to run concurrently. Mendez was already serving a life sentence after pleading guilty in state court to first degree murder. The Court ordered that the sentences imposed were to run concurrently with his state sentence.

would have been different.  Id.

III.

The validity of a guilty plea rests on whether the plea was "knowing, voluntary and intelligent."  United States v. Tidwell, 521 F.3d 236, 2008 WL 835252, *13 (3d Cir. 2008).  Rule 11 of the Federal Rules of Criminal Procedure requires the court to engage in a colloquy to "determine that the plea is voluntary."  Fed. R. Crim. P. 11(b)(2). Mendez claims that his guilty plea to the first indictment was not made knowingly and intelligently, and that the District Court should not have accepted that guilty plea because it knew that Mendez had sustained a head injury and was not fully conversant in the English language.[4]

It is beyond doubt that Mendez fully understood the consequences of his guilty plea and that the District Court conducted a thorough inquiry into whether he was mentally alert and understood English.  When Mendez informed the Court about the "bump on [his] head" (App. 15), which he claimed was the result of an assault, the Court asked him if he understood what the Court was talking about and whether he had understood his attorney when he talked to him before the hearing.  Mendez confirmed that he had understood his attorney and understood the Court so far.  Even so, the District Court instructed Mendez to interrupt if he did not understand something the Court said.

Neither did the District Court have any reason to believe that Mendez's understanding of the plea hearing was inhibited due to any deficiencies in his ability to

---

[4] Mendez does not challenge the sufficiency of the colloquy itself.

5

understand English. When the Court asked him if he could read, write, and understand English, he said he could write it, and could "read it and understand it a little bit." (App. 14.) After further inquiry, he explained that he sometimes couldn't "remember the paragraphs [he] read" and had a problem pronouncing some words. (Id.) The Court then asked if he could understand when he read English and he replied that he understood some words, but that his vocabulary was not good. The Court instructed him to interrupt if he did not understand any word the Court used.

Throughout the hearing, Mendez answered all of the Court's questions in English, demonstrated no difficulty comprehending those questions, at no time said he did not understand, and never requested a Spanish interpreter. Nor did Mendez's counsel request an interpreter or otherwise object to the use of English. Simply stated, there is nothing in the record that would lead to the conclusion that Mendez had difficulty with English. We note, moreover, that the PSR stated that, although Mendez was born in Puerto Rico, he has lived in the United States since the late 1970's, graduated from a public school in Philadelphia and, for a short time, worked in retail. We also note that almost all of Mendez's intercepted telephone calls were in English.

Mendez argues that the presence of an interpreter at the second plea hearing is evidence that he was not conversant in English. We reject that argument based on the colloquy conducted at that hearing. When the District Court asked defense counsel if Mendez required an interpreter, counsel told the Court that Mendez did not need one, "[h]e talk[ed] to him all the time" (App. 52), and a Spanish interpreter had confirmed

6

with Mendez that he felt comfortable with the hearing being conducted in English and did not need an interpreter. When questioned by the Court as to whether he could read and write English, and whether he fully understood English, Mendez said that he did. Mendez accepted the Court's offer for the interpreter to stand by in the event he had any questions, and the Court instructed Mendez that if at any time he did not understand something he should ask the interpreter to translate or for the Court to repeat what had been said. Despite the presence of the interpreter, however, Mendez answered all the questions in English, did not ask for a translation, and did not otherwise say that he did not understand.

Finally, Mendez argues that his use of an interpreter at his sentencing hearing is "troubling" and is further evidence that he could not fully understand English. On the day originally set for sentencing, defense counsel told the District Court that it might be "wise" to have an interpreter because although he always talked to Mendez without an interpreter, Mendez sometimes got confused and, despite the fact that Mendez had not previously used an interpreter, sentencing was too important to continue without an interpreter. The prosecutor noted that he had also spoken to Mendez in English, but that an interpreter should be present out of caution. The Court agreed, and postponed the hearing because no interpreter had been ordered. At the sentencing hearing some days later, Mendez used the interpreter and, interestingly, Mendez's counsel read a letter to the Court that Mendez had written in English. The fact that the Court permitted an interpreter to be used at the sentencing hearing does not alter the fact that, at the plea hearing in

question, Mendez confirmed multiple times that he understood English and at no point evinced any difficulty in comprehension.

## IV.

We see no error here, much less plain error. We will affirm the judgment of the District Court.